PORTER et ux. v. SHAW. (No. 3572.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 21, 1928.

Rehearing Denied Jan. 10, 1929.

O. H. Rodes, of Emory, and Jones & Jones, of Mineola, for appellants.

Garrett & Berzett, of Emory, for appellee.

HODGES, J. On November 15, 1922, R. J. Porter and wife executed the following written instrument:

"The State of Texas, County of Rains.

"Know all men by these presents: That R. J. Porter, of the County of Rains, State of Texas, has and by these presents does grant, bargain, sell, convey, set over and assign and deliver unto J. T. Shaw the following, to-wit:

"One-sixteenth royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Rains County, Texas, to-wit: (The tract referred to consisted of 62.2 acres. Further details of the description are omitted as immaterial.)

"And said above described lands being now under an oil and gas lease originally executed in favor of ———, and now held by ———, it is understood and agreed that this sale is made subject to said lease, covers and includes one-sixteenth of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that one-sixteenth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said J. T. Shaw; and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by J. T. Shaw and R. J. Porter and ———, each owning one-sixteenth interest in all oil, gas and other minerals in and under said land, together with ——— interest in all future rents.

"To have and to hold, the above described property together with all and singular the rights and appurtenances thereto in anywise belonging unto the said J. T. Shaw, his heirs and assigns forever; and we do hereby bind ourselves, heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said J. T. Shaw, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. It being agreed and understood that this contract shall end four years from the date of the contract."

The record shows that the land referred to in the above instrument formerly belonged to Shaw, and had been conveyed to Porter by W. F. Mann, who held the title for Shaw. It seems to have been a part of the contract of the sale that Shaw should retain an interest in the minerals in the land, and this instrument was executed for the purpose of preserving that right. It is undisputed that the land was not leased at the time the above contract was made, and all parties interested knew that it had not been leased. The evidence also shows that in November, 1923, the land was leased by Porter and wife to the Atlantic Oil Producing Company, a Delaware corporation. That lease was in the usual form, providing that, in the event one or more wells are produced, the lessee was to pay the lessor one-eighth of the minerals. The lease, however, contained a stipulation that, if no well was commenced on the land before the 16th of November, 1924, the lease should terminate, unless the lessee should pay the sum of $62.20, which should operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from that day. It was further provided that like payments or tenders thereafter made should further extend the time for the sinking of a well. The cash consideration received by Porter from the Atlantic Oil Producing Company was $482.05. No well was commenced within the time prescribed in the lease, and the Atlantic Oil Producing Company paid two annual rentals consisting of $62.20 each. Porter paid over to Shaw one-half of those annual rentals, but refused to pay one-half of the cash consideration of $482.05 which had been paid by the leasing company.

This suit was instituted by Shaw against Porter and wife for the purpose of recovering the one-half of the cash payment above referred to, and also to reform the written conveyance made by Porter and wife to him. He alleges that, on account of a mistake, the scrivener who wrote the contract omitted some important terms. In his prayer for relief he sought a reformation of the contract and a judgment for one-half of the money paid by the leasing company to Porter.

The case was submitted to the court without a jury, who rendered a judgment in favor of Shaw for the sum of $241.02, one-half of the cash consideration received by Porter for the lease of the land. The court also rendered a judgment in Porter's favor canceling the lease, it having expired by its original terms.

 The principal question involved in this appeal is, does the written contract convey to Shaw an interest in what Porter calls the "bonus," or $482.05, paid by the leasing oil company? In the trial below the court permitted Shaw, over the objection of Porter, to introduce parol testimony as to what the parties understood the contract to mean. We regard the error, if any, in admitting that parol testimony, as immaterial, since we conclude that a fair construction of the instrument itself supports the judgment of the court. The writing shows that the parties were contracting with reference to two subjects—one the royalty which it was contemplated would be paid by a lessee from producing wells on the land. The parties, in their briefs at least, concede that the term "royalty" as used meant one-eighth of the minerals produced. The other subject was the money consideration which might be paid for the lease of the land or the privilege of sinking wells. We may disregard as surplusage that provision of the contract which assumed that

the land was leased at the time the contract was executed, and the stipulations with reference to future rentals under that lease. We come, then, to the following language, which immediately follows those provisions:

"The lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by J. T. Shaw and R. J. Porter, and ———, each owning one-sixteenth interest in all oil, gas and other minerals in and upon said land, together with ——— interest in future rents."

Evidently the language "the lease interests and all future rentals on said land" was intended to convey something not included in the stipulation with reference to the royalty. These other mineral rights were to be owned jointly by Shaw and Porter. The language "each owning one-sixteenth interest in all oil, gas," etc., merely recites what is included in the preceding granting clause of the conveyance.

We think the court correctly construed the instrument, although it is not entirely free from ambiguity. The judgment will therefore be affirmed.