**DILS COMPANY, Appellant,**

**v.**

**Mattie GARRETT et al., Appellees.**

**No. 3422.**

Court of Civil Appeals of Texas.

Waco.

Oct. 18, 1956.

Rehearing Denied Nov. 8, 1956.

Bracewell, Tunks, Reynolds & Patterson, Houston, for appellant.

Dawson & Dawson, Corsicana, for appellees.

McDONALD, Chief Justice.

This case involves the construction of a mineral deed dated 7 December 1921, to determine the interest acquired by the grantee. Prior to 30 December 1920 plaintiffs' predecessors were owners in fee simple of the 151 acre tract of land in Navarro County involved in this case. On 30 December 1920 plaintiffs' predecessors executed an oil and gas lease in the usual form to one Humphreys, which provided that he receive

⅞ of the oil and gas produced, and that lessors receive ⅛ of same as royalty. Such lease was in full force and effect on 7 December 1921, but thereafter, and prior to this case, had expired by its own terms. On 7 December 1921 plaintiffs' predecessors as grantors executed an instrument designated as a "Mineral Deed", conveying to one Caldwell the interest now owned by defendant in the 151 acre tract here involved. Plaintiffs now stand in the shoes of their predecessors in title and defendant now stands in Caldwell's shoes. Pertinent portions of the mineral deed follow:

"Mineral Deed

"The State of Texas ⎱ Know All Men By
County of Navarro ⎰ These Presents:

"That C. S. Garrett and wife, Mattie Garrett, both of Navarro County, Texas, for and in consideration of the sum of Fifteen Thousand Dollars cash in hand paid by J. Mentor Caldwell, hereinafter called Grantee, receipt of which is hereby acknowledged, have granted, sold, conveyed, assigned and delivered and by these presents do grant, sell, convey, assign and deliver unto the said Grantee an undivided one sixty-fourth interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land: (Description follows)

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of I. B. Humphreys or his assigns, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-eighth of all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one-eighth of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said Grantee and in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-eighth of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee, he owning one-eighth of one-eighth of all oil, gas, and other minerals in and under said lands, together with one-eighth interests in all future rents.

"To have and to hold the above described property * * *.

"Witness our hands this 7th day of December, 1921.

"C. S. Garrett
"Mattie Garrett."

(There follows statutory acknowledgment and recordation certificate).

The only issue in this case is the construction of the foregoing mineral deed so as to determine the nature of the interest acquired by Caldwell and now owned by defendant. Both plaintiffs and defendant agree that the instrument is subject to construction from its own four corners. Plaintiffs contend that the instrument conveys only ¹⁄₆₄ of the minerals to Caldwell (and defendant) even after the termination of the Humphreys lease of 20 December 1920. Defendant, on the other hand, contends that the instrument construed in its entirety effects a conveyance to Caldwell (and defendant) of ⅛ of the minerals under the tract (after termination of the Humphreys lease).

The Trial Court, without a jury, held that the mineral deed under review conveyed to defendant ¹⁄₆₄ of the minerals under the land; ¹⁄₆₄ of the royalties; and ⅛ of bonus moneys and delay rentals. From the foregoing the defendant appeals, contending 1) that the mineral deed conveys ⅛ of the minerals under the tract;

2) that the mineral deed conveys ⅛ of the royalties payable under existing and future leases on the property.

Analyzing the mineral deed itself, we observe:

The State of Texas⎫ Know All Men
County of Navarro⎭ By These Presents:

1) That grantor grants, sells, and conveys to grantee an undivided ¼₄ interest in the oil, gas, and minerals of the land in question, together with the right of ingress and egress to drill and remove same.

2) The land is under oil and gas lease to I. B. Humphreys and it is understood that this sale is made subject to the terms of said lease, but covers and includes ⅛ of all oil royalty due and to be paid under the terms of said lease.

3) It is understood and agreed that ⅛ of the money rentals which may be paid to extend such lease is to be paid to Grantee, *and in event the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided ⅛ of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by Grantee, he owning ⅛ of ⅛ of all oil, gas and other minerals in and under said lands, together with ⅛ interest in all future rents.*

The meaning of the italicized portion above is the portion of the mineral deed which gives rise to the controversy.

Reviewing for a moment, originally the grantors (plaintiffs' predecessors) owned the land in fee simple. In 1920 they executed an oil and gas lease in the usual form to Humphreys. After the execution of the lease to Humphreys *grantors* were the owners of ⅛ of the mineral interest in the land in question together with a conditional reversionary interest in the other ⅞ upon the termination of the lease to Humphreys. Such was the situation at the time that the grantors executed the mineral deed here in issue.

Our Supreme Court, in Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004, affirms that a mineral lease in the usual form retains in the lessor title to ⅛ of the minerals with the possibility of reversion of the remaining ⅞ interest, and further holds that the *lessor* has the right to sell not only the ⅛ interest retained in the prior lease, but also the reversionary interest in the remaining ⅞ interest.

From the foregoing authority we observe that plaintiffs' predecessors had a right to sell not only the ⅛ interest retained in the prior lease, but also the reversionary interest in the remaining ⅞ interest. The question here is: by the mineral deed under review, what was actually sold and conveyed?

Construed in its entirety it seems to us that the mineral deed, supra: 1st) conveys ¼₄ of the minerals; 2nd) conveys ⅛ of the royalty to be paid under the Humphreys lease *which it is stipulated the mineral deed is made subject to* (this amounts to ¼₄ of the total royalty); 3rd) conveys ⅛ of the money rentals to extend such lease; and 4th) *and then* specifically provides: and in event the above described (Humphreys) lease becomes cancelled or forfeited, *then and in that event an undivided ⅛ of the lease interest and all future rentals shall be owned by grantee,* he owning ⅛ of ⅛ of all oil, gas, etc., together with ⅛ interest in all future rents. We think the foregoing language is such as to convey to the grantee ⅛ of the minerals and ⅛ of the royalties. We think the language *"in event that the above described lease becomes cancelled or forfeited, then and in that event, an undivided ⅛ of the lease interest and all future rentals on said land * * * shall be owned by grantee"*, conveyed to grantee ⅛ of grantors' conditional reversionary interest in the ⅞ of the oil and gas of which Humphreys was then the owner.

The mineral deed clearly says to us that when the Humphreys lease is cancelled—grantee shall own ⅛ of the lease interest

and all future rentals. We believe that this language means exactly what it says.

Grantors had a right to make such a conveyance and we think that they made such, and we think that upon termination of the Humphreys lease grantee became the owner of an undivided ⅛ interest in the minerals.

The express language of the mineral deed provided that grantee would own an undivided ⅛ of the minerals in the event the Humphreys lease terminated. The grantors had a right to do this. The Humphreys lease has terminated. To us it is clear that in this event (termination of the Humphreys lease) the mineral deed conveys to the grantee an undivided ⅛ interest in the minerals.

The language of the mineral deed under consideration conveys to grantee an undivided *"one-eighth of the lease interest"* (after termination of the Humphreys lease). *"Lease interest"* could mean only one of two things. It must mean the lease interest of a lessee or the lease interest of a lessor. Whichever construction we place on the language, it would here result in the grantee acquiring, after the termination of the Humphreys lease, an interest which, when added to the other interests conveyed to grantee in the first portion of the deed, totals an interest of ⅛ of the minerals. See Williams v. J. & C. Royalty Co., Tex.Civ.App., 254 S.W. 2d 178, Er. Ref.; Young v. Rudd, Tex. Civ.App., 226 S.W.2d 469, Er. Ref.; Allen v. Creighton, Tex.Civ.App., 131 S.W.2d 47, Er. Ref.

Further to all that has been said, we think that the *construction* we have applied to the mineral deed under review is identical with the construction applied by the Commission of Appeals (opinion adopted by Supreme Court) to the mineral deed under review in Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563.

From the foregoing it follows that the judgment of the Trial Court is reversed

and judgment is here rendered that defendant, by virtue of the mineral deed supra, owns ⅛ of the minerals and royalties; the judgment of the Trial Court holding that defendant is entitled to ⅛ interest in bonus moneys and delay rentals is affirmed.

Affirmed in part, reversed and rendered in part.