**Donald E.M. WAGSTAFF and Wife, Carolyn Lucille Wagstaff, Appellants,**

v.

**A.P. MATTHEWS, Jr., Appellee.**

**No. 12–86–0167–CV.**

Court of Appeals of Texas, Tyler.

April 30, 1987.

Rick McPherson, Parker & McPherson, Carthage, for appellants.

Leroy LaSalle, LaSalle & Underwood, Carthage, for appellee.

COLLEY, Justice.

This suit involves a dispute over the ownership of lignite deposits underlying an 80–acre tract of land located in Panola County. The trial court, after a jury trial, signed a judgment in favor of A.P. Matthews, Jr., plaintiff/appellee (Matthews). We affirm the judgment.

The documentary evidence reveals the following undisputed facts and circumstances. On May 6, 1968, Matthews signed and delivered a coal and lignite lease (plaintiff's exhibit no. 1) to "Bob M. Lloyd, Trustee,"[1] covering two tracts of land recited to contain 132.12 acres embracing the 80 acres in question. The lease provided for payments to Matthews of annual rentals as well as royalties for lignite mined and removed from the premises during the term

of the lease. On November 3, 1969, Matthews conveyed the 80 acres to the Veterans Land Board of Texas[2] (plaintiff's exhibit 2, hereafter referred to as "the deed"). The deed contained, inter alia, the following provisions to wit:

IT IS SPECIFICALLY UNDERSTOOD, HOWEVER, that one half (½) of the oil, gas and other minerals in and under and that may be produced from the tract of land herein conveyed, are excepted and reserved for the benefit of Grantor and the other record owner or owners of such minerals, as their several interests may appear, together with the right of ingress and egress at all times for the purpose of mining, producing, exploring, saving and marketing such minerals, or either of them.[3]

This conveyance is made subject to the terms and rights now existing under the Coal and Lignite lease in favor of Bob M. Lloyd or any existing Coal and Lignite or Oil and Gas Lease of record covering the above described land, but covers and includes and there is hereby conveyed and granted herein an undivided one half (½) interest in and to all bonuses, rents and royalties due and to be paid under the terms thereof.[4]

During mining operations and after Texas Utilities Mining Company (TUMCO), the beneficial owner[5] of the coal and lignite lease, completed its lignite mining operations on the 80-acre tract, it suspended payment of one-half of the lignite royalties due and payable under the lease because of the disputed ownership thereof. Matthews filed suit against Wagstaff on February 17, 1982, seeking a declaratory judgment that the provisions of the deed reserved to him one-half of the coal and lignite. Matthews filed an amended petition on March 11, 1982, adding Wagstaff's wife, Carolyn Lu-

---

1. For an undisclosed beneficial owner.

2. Pursuant to the application of Donald Wagstaff, defendant/appellant (Wagstaff), who selected and agreed to purchase the same under the Texas Veterans Land Program. *See* Tex.Nat. Res.Code Ann. § 161.281–.286 (Vernon 1978, Vernon Supp.1987). (Before trial the Board conveyed the land to Wagstaff.)

3. For the sake of clarity and convenience, this paragraph will hereafter be referred to as "Paragraph 1" or "First Paragraph."

4. For the sake of clarity and convenience, this paragraph will hereafter be referred to as "Paragraph 2" or "Second Paragraph."

5. Or a subsidiary of the owner.

cille Wagstaff,[6] as a party defendant, and alternatively seeking reformation of the reservation in the deed to specifically include coal and lignite. By trial amendment filed on June 3, 1986, Matthews pleaded mutual mistake of the parties in the omission of the term " 'coal and lignite' from the mineral reservation contained in ... [the deed]."

This case went to trial before a jury, and at the close of the evidence, the court submitted three special issues to the jury. The issues, answers and the court's explanatory instructions relating thereto are as follows:

> You are instructed that under present Law, the term 'other minerals' when it appears in a mineral reservation does not include coal and lignite, when the coal and lignite is within two hundred feet of the surface, and any reasonable method of removal would consume, deplete or destroy the surface.
>
> ....

SPECIAL ISSUE NO. 1

> Do you find from the preponderance of the evidence that Plaintiff and Defendant intended that the Deed to the Veterans Land Board reserve one-half of the coal and lignite in the 80–acre tract in favor of A.P. Matthews?
>
> Answer: 'They did' or 'They did not.'
> Answer: They did.

SPECIAL ISSUE NO. 2

> Do you find from the preponderance of the evidence that Plaintiff and Defendant were mutually mistaken as to the legal effect of the mineral reservation contained in the Deed to the Veterans Land Board?
>
> Answer: 'Yes' or 'No.'
> Answer: No.
>
> In connection with the foregoing Special Issues you are instructed that by the term 'mutual mistake,' it is meant a mistake that is common to both parties to a transaction, each of who [sic] is under the same mistake as to its terms. A

'mutual mistake' exists when the parties to an instrument are under a clear agreement as to the factual and legal result they wish to accomplish by it, but the legal effect of the words they use does not produce that result.

SPECIAL ISSUE NO. 3

> Do you find from the preponderance of the evidence that Plaintiff and Defendant believed at the time of the execution of the Warranty Deed, that the mineral reservation effectively reserved to Plaintiff a one-half interest in the coal and lignite in the 80–acre tract conveyed to the Veterans Land Board?
>
> Answer: 'They did' or 'They did not.'
> Answer: They did.

Based on the jury's affirmative answers to Special Issues 1 and 3,[7] the trial court signed a judgment in favor of Matthews adjudging him to be the "true owner of an undivided one-half (½) interest in and to the coal and lignite ... [and decreeing] that the Defendant has no right, title or interest in and to one-half (½) of the *royalties due and payable* under ... any valid and subsisting coal and lignite lease." (Emphasis ours.)

Wagstaff urges one point of error, contending the trial court erred in overruling his motions for instructed verdict and judgment non obstante veredicto "because the mineral reservation in question did not affirmatively and fairly evidence an intention to reserve coal and lignite." The motions urged by Wagstaff are all bottomed on the premise that under the decisions in *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971); *Reed v. Wylie (II)*, 597 S.W.2d 743 (Tex.1980); and *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99 (Tex.1984), as a matter of law, the mineral reservation did not reserve one-half of the coal and lignite. In this connection, we observe that the parties stipulated at trial that coal and lignite deposits [8] were located within 200 feet of the surface of the 80–acre tract, and that "any reasonable meth-

---

**6.** Matthews' daughter.

**7.** The judgment recited, inter alia, "It appearing to the Court that the verdict ... was for the Plaintiff...."

**8.** Obviously in substantial quantities.

od of removal [thereof] would consume, deplete or destroy the surface."

Matthews, in answer to Wagstaff's arguments, refers us to several Supreme Court decisions [9] predating *Acker v. Guinn, supra,* and *Reed v. Wylie (II), supra,* stating rules of construction to be followed in determining the intention of parties to deeds and conveyances. Matthews claims that *Reed v. Wylie,* 597 S.W.2d 743, is not applicable to this case, because as the jury found, the parties intended that Matthews was to reserve one-half of the coal and lignite, and that intention was ascertainable [10] from the language employed in the reservation. We agree that *Reed v. Wylie II* is inapplicable here, but for a different reason. The rule in *Reed v. Wylie II* applies in circumstances where the grantor in a conveyance asserts title to an *unnamed* mineral substance claimed to have been impliedly reserved by the term "other minerals." In *Reed v. Wylie (I),* 554 S.W.2d 169, 172 (Tex.1977), the court observed that "[i]f the [language in the deed there involved] had specifically reserved coal and lignite, or if the conveyance had expressly reserved all minerals lying upon the surface or at any depth and including those minerals which may be produced by open pit or strip mining, *the intention and effect of the instrument would have been clearly expressed.* Furthermore, mineral ores and coal and lignite would ordinarily be reserved to the mineral interest owners by the terms [11] [of the deed under consideration]." (Emphasis ours.) The second paragraph of the deed in question here contains a specific reference to coal and lignite, and conveys to the Veterans Land Board only an "undivided one-half interest in and to all *bonuses, rents and royalties"* payable under an existing coal and lignite lease. (Emphasis ours.) Paragraph two,

when read with paragraph one, which reserves to Matthews one-half of the oil, gas and "other minerals," is, in our opinion, sufficient to express unambiguously a specific intent to reserve one-half of the coal and lignite underlying the tract involved. We so construe [12] the reservation, and conclude, as a matter of law,[13] that Matthews effectively reserved in his favor one-half of the coal and lignite underlying [14] the 80–acre tract, and one-half of the benefits payable under the coal and lignite lease. Wagstaff's contentions (1) that paragraph two serves only to protect Matthews on his warranty, (2) reserves nothing, and (3) that all the coal and lignite in place was conveyed to him and one-half of the rents, bonuses, and royalties due under the coal and lignite lease were conveyed to the Veterans Land Board "to protect [its] collateral," are without merit. When paragraphs one and two are read together, paragraph two immediately following paragraph one explains that the mineral reservation contained in paragraph one covers coal and lignite, that the lands are subject to a coal and lignite lease, but that Wagstaff (under the deed to the Veterans Land Board, and his contract with the Veterans Land Board) is granted one-half of the coal and lignite underlying the lands, and one-half of the benefits payable under the outstanding coal and lignite lease. The last phrase of paragraph two, which recites, "This conveyance ... *covers and includes and there is hereby conveyed and granted herein* an undivided one-half ... interest in and to all bonuses, rents, and royalties [due and payable under the lease]." (Emphasis ours.) This definitive language demonstrates that a one-half interest in the rentals, bonuses, and royalties payable under the existing coal and lignite lease are conveyed to the Veterans Land Board because Matthews reserved only one-half of the

9. E.g., *Smith v. Jasper County Lumber Co.,* 124 Tex. 156, 76 S.W.2d 505 (1934); *Germany v. Turner,* 132 Tex. 491, 123 S.W.2d 874 (1939).

10. As an issue of fact.

11. The reservation there, in part, read, "There is ... reserved ... a one-fourth ... in and to all oil, gas *and other minerals....*" (Emphasis ours.)

12. *See Garrett v. Dils Company,* 157 Tex. 92, 299 S.W.2d 904 (1957).

13. *See Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 524 (Tex.1982).

14. At whatever depth it is encountered.

coal and lignite under the terms of paragraph one. The language of these paragraphs read together, is not ambiguous, and we must enforce the parties' agreement as written. *Cherokee Water Company v. Forderhause,* 641 S.W.2d at 524.

The trial court's judgment is correct for the reasons stated herein, and it is affirmed.[15]

15. We presume, if in fact, as suggested by the record that TUMCO, or its parent company, paid the cash royalties into the court's registry, the trial court will direct the clerk to pay the same with interest earned thereon to Matthews, less the fee allowed the county for management of the fund. *See* Tex.Rev.Civ.Stat.Ann. art. 2558a (Vernon Supp.1987).