# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0111

═══════════

U.S. SHALE ENERGY II, LLC, RAYMOND B. ROUSH, RUTHIE ROUSH DODGE, AND
DAVID E. ROUSH, PETITIONERS,

v.

LABORDE PROPERTIES, L.P., AND LABORDE MANAGEMENT, LLC, RESPONDENTS

───────────────────────────────
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
───────────────────────────────

**Argued February 28, 2018**

JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion, in which JUSTICE JOHNSON and JUSTICE BLACKLOCK joined.

We are asked whether the royalty interest reserved to the grantor in a 1951 deed is fixed (set at a specific percentage of production) or floating (dependent on the royalty amount in the applicable oil and gas lease). The trial court concluded it was floating, but the court of appeals disagreed and held it was fixed. In light of the language and structure of the reservation at issue—our sole guide in ascertaining the intent of the parties to this deed—we agree with the trial court that the deed unambiguously reserved a floating 1/2 interest in the royalty in all oil, gas, or other

minerals produced from the conveyed property. Accordingly, we reverse the court of appeals' judgment.

## I. Background

On January 6, 1951, J.E. and Minnie Bryan conveyed by deed all right, title, and interest in a tract of land in Karnes County, Texas, to S.E. Crews. In this deed, the Bryans reserved a nonparticipating royalty interest in the minerals. The reservation in the Bryan deed states:

> There is reserved and excepted from this conveyance unto the grantors herein, their heirs and assigns, an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production. This reservation is what is genaerally [sic] termed a non-participating Royalty Reservation . . . .

Through a series of conveyances, U.S. Shale Energy II, LLC, acquired a share of the Bryans' reserved interest such that, today, the Bryans' heirs and U.S. Shale (collectively, the Bryan successors) own the nonparticipating royalty interest reserved in the Bryan deed. In 2010, Laborde Properties, L.P., acquired all right, title, and interest in portions of the property that is subject to the Bryan successors' nonparticipating royalty interest. At the time Laborde acquired the property, EOG Resources held an oil and gas lease providing for a lessor's royalty of 20%, i.e., 1/5.[1]

After acquiring the property, Laborde received a division order from EOG reflecting that the Bryan successors were being credited with 1/2 of that 1/5 royalty (for a total of 1/10 of production). Laborde disputed this position, contending that the Bryan successors should be credited with only 1/16 of total production by virtue of the fixed 1/16 royalty reserved in the Bryan

---

[1] EOG acquired this interest by assignment from Whitmire Land Services Company in December 2009. The lease was originally executed in April 2008 by Whitmire and Laborde's predecessors-in-interest.

deed. After Laborde notified EOG of its disagreement, EOG suspended payments pending resolution of the dispute.

U.S. Shale sued Laborde,[2] seeking a declaratory judgment that the Bryan deed reserved a floating 1/2 royalty interest, resulting in a 1/10 royalty under the EOG lease (1/2 of the 1/5 royalty contained in the lease). The Bryans' heirs—Raymond B. Roush, Ruthie Roush Dodge, and David E. Roush—intervened as plaintiffs. Laborde counterclaimed, seeking, in pertinent part, a declaration that the deed reserved a fixed 1/16 royalty.[3] The parties filed cross motions for summary judgment as to the declaratory judgment claims. The trial court granted the Bryan successors' motions and denied Laborde's, declaring that the Bryan deed reserved a floating 1/2 royalty interest and, in a separate order, awarding the Bryan successors their attorney's fees.[4]

The court of appeals reversed. ___ S.W.3d ___, ___ (Tex. App.—San Antonio 2016). Examining the entire deed, the court determined that no provision other than the reservation itself had significance to the nature of the royalty reserved and held that the language "'the same being equal to one-sixteenth of the production' . . . qualifies, modifies, or clarifies the preceding undivided one-half language, showing an intent to reserve a fixed one-sixteenth (1/16) interest." *Id.* at ___. The court of appeals thus remanded the case to the trial court to reconsider attorney's fees. *Id.* at ___. We granted the Bryan successors' petition for review.

---

[2] U.S. Shale sued both Laborde Properties and its general partner, Laborde Management, LLC. These entities are hereinafter collectively referred to as Laborde.

[3] The difference is significant because, under Laborde's interpretation, the Bryan successors would be entitled to slightly less than 1/3 of the royalty under the current lease, rather than 1/2.

[4] The trial court also severed Laborde's remaining counterclaims into a separate cause, such that the declaratory judgment and award of attorney's fees in favor of the Bryan successors became final and appealable.

## II. Discussion

### A. Interpretation Principles and Contextual Overview

As is often the case, the parties here agree the deed in question is unambiguous but diverge on its proper interpretation. *See, e.g.*, *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Garrett v. Dils Co.*, 299 S.W.2d 904, 907 (Tex. 1957). "When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the [instrument]." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). "We examine the entire [instrument] and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); *Luckel*, 819 S.W.2d at 462 (noting that, in construing a deed, we attempt to harmonize provisions that "appear contradictory or inconsistent" so as "to give effect to all of its provisions"). Recently, in *Hysaw v. Dawkins*, we reaffirmed "our commitment to a holistic approach aimed at ascertaining intent from all words and all parts" of the deed. 483 S.W.3d 1, 13 (Tex. 2016). Further, we consider the words used in light of "the facts and circumstances surrounding the [instrument's] execution." *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). We may consider such circumstances to the extent they "inform, rather than vary from or contradict, the [instrument's] text." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 767 (Tex. 2018).

In this case, questions arise about the intent of the parties to the deed with respect to the nature of the royalty interest reserved to the grantor. A royalty interest "is a nonpossessory interest in minerals that may be separately alienated." *Luckel*, 819 S.W.2d at 463. It may be conveyed or reserved in two ways: "'as a fixed fraction of total production' (fractional royalty interest) or 'as a fraction of the total royalty interest' (fraction of royalty interest)." *Hysaw*, 483 S.W.3d at 9

4

(quoting *Luckel*, 819 S.W.2d at 464). A fractional royalty interest is referred to as a fixed royalty because it "remains constant" and is untethered to the royalty amount in a particular oil and gas lease. *Id.* A fraction of royalty interest is referred to as a floating royalty because it varies depending on the royalty in the oil and gas lease in effect and is calculated by multiplying the fraction in the royalty reservation by the royalty in the lease. *See id.* The language used in the conveyance instrument determines whether the interest is fixed or floating. *See id.* at 11–13; Christopher Kulander, *Fixed vs. Floating Non-Participating Oil & Gas Royalty in Texas: And the Battles Rage On . . .*, 4 TEX. A&M L. REV. 41, 44–46 (2016).

Disputes over whether a conveyance or reservation reflects a fixed or floating royalty interest are common when a deed contains multiple fractions.[5] These so-called double- and restated-fraction cases frequently involve multiples of 1/8, which was "the usual royalty provided in mineral leases" at the time the Bryan deed was executed. *Garrett*, 299 S.W.2d at 907; *see also Hysaw*, 483 S.W.3d at 9. The ubiquity of the 1/8 landowner royalty led many landowners to presume that the landowner royalty would remain 1/8 in perpetuity. *See Hysaw*, 483 S.W.3d at 10; *Luckel*, 819 S.W.2d at 462. We have thus recognized that, "[t]hough not inexorably so, the reality is that use of 1/8 (or a multiple of 1/8) in some instruments undoubtedly embodies the parties' expectation that a future lease will provide the typical 1/8th landowners' royalty with no intent to convey a fixed fraction of gross production." *Hysaw*, 483 S.W.3d at 11.

---

[5] *See generally Alford v. Krum*, 671 S.W.2d 870 (Tex. 1984); *Brown v. Havard*, 593 S.W.2d 939 (Tex. 1980); *Garrett v. Dils Co.*, 299 S.W.2d 904 (Tex. 1957); *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex. Civ. App.—Texarkana 1936, writ ref'd).

**B. Analysis**

The Bryan deed reserved "an undivided one-half (1/2) interest in and to the Oil Royalty, Gas Royalty and Royalty in other Minerals in and under or that may be produced or mined from the above described premises, the same being equal to one-sixteenth (1/16) of the production." Read independently, the sentence's first clause reserves a floating royalty interest equal to one-half of the royalty contained in the oil and gas lease in effect. *See id.* at 9 (describing a floating royalty "as a fraction of the total royalty interest" (quoting *Luckel*, 819 S.W.2d at 464)); *see also Schlittler v. Smith*, 101 S.W.2d 543, 544–45 (Tex. 1937). The issue is whether the second clause— "the same being equal to one-sixteenth (1/16) of the production"—indicates an interest fixed at 1/16 of production despite the language in the first clause tying it to the royalty. Of course, as long as the landowner's royalty provided in a lease agreement governing the minerals is set at 1/8, the reservation has the exact same effect regardless of whether the reserved interest is classified as fixed or floating. However, in the event that the royalty deviates from 1/8, as it does in the EOG lease in this case, the classification becomes significant.

The parties agree, and the court of appeals recognized, that apart from the single sentence reserving the royalty interest, no other provisions in the Bryan deed contain language that might shed light on the parties' intent. ___ S.W.3d at ___. We therefore must harmonize the language in the reservation based on the structure of the provision itself. The court of appeals held that the second clause (the same being equal to 1/16 of production) modified the first (1/2 of the royalty), "showing an intent to reserve a fixed one-sixteenth (1/16) interest." *Id.* at ___. We disagree and hold that the deed reserved a floating 1/2 royalty interest.

6

First, as noted, the language used in the first clause clearly indicates that the parties intended to reserve an amount that would "float" with the governing lease. By using the phrase "one-half (1/2) interest in and to the Oil Royalty," the parties expressed their intent to tie the reservation to the royalty rate that was in effect at any given time. While this rate was typically 1/8 in 1951 (which, as discussed below, explains the language "the same being equal to one-sixteenth (1/16) of the production"), the record contains no evidence that a lease was in effect when the deed was executed. The parties could not have intended to tie the reservation to something that simply did not exist. The dissent opines that, rather than tying the reservation to a nonexistent royalty, the parties intended to limit the reservation to 1/8 because that was the rate commonly used at the time. However, the deed contains no language indicating that the parties intended to limit the reservation in this way. Rather, the language quite plainly reserves 1/2 of the "[r]oyalty," which must refer to a royalty that could come into being at some point in the future.

We impliedly recognized as much in *Schlittler v. Smith*. The grantor in *Schlittler* reserved "an undivided one-half interest in and to the royalty rights on all of oil and gas and other minerals in, on and under or that may be produced from the land." 101 S.W.2d at 544. We held that the reservation entitled the grantor to "one-half of such royalty as may be reserved in any oil, gas or mineral lease which may be executed by the [grantee]." *Id.* at 545. In so holding, we disagreed with the trial court that the language reflected an intent to reserve one-half of "not less than the usual one-eighth royalty," even though "very likely neither of the parties thought [the royalty] would be less" than one-eighth. *Id.* at 544–45. The language in the first clause of the deed's reservation in this case is quite similar to the reservation language in *Schlittler*, and we read it the

7

same way: to entitle the grantor to "one-half of such royalty as may be reserved in any oil, gas or mineral lease which may be executed." *Id.* at 545.

Turning to the effect of the second clause, we cannot conclude, consistent with our rule of construction mandating that no language be rendered meaningless, that "the same being equal to one-sixteenth (1/16) of the production" somehow modifies the plain meaning of the first clause. To that end, if a lease agreement provides for any royalty rate other than 1/8 (such as the 1/5 royalty currently in effect), in order for the reserved royalty interest to remain consistent with 1/16 of production, that interest would necessarily deviate from 1/2, rendering the 1/2 interest clause meaningless.[6] Thus, we conclude the only reasonable way to reconcile these clauses is to read the second clause, "the same being equal to one-sixteenth (1/16) of the production," to clarify, as an incidental factual matter, what a 1/2 interest in the royalty amounted to when the deed was executed.

So construed, neither clause is rendered meaningless because both continue to be given effect in the face of leases departing from what was once a "ubiquitous" 1/8 royalty. This is demonstrated by applying the two proposed interpretations. As noted, the current lease on the property at issue provides for a 1/5 royalty. If we construe the deed to reserve a floating royalty interest, entitling the Bryan successors to 1/10 of production (i.e., 1/2 of the 1/5 royalty), it continues to be true that (1) the deed reserved a 1/2 interest in the royalty (which is now 1/5), and (2) that 1/2 interest amounted to 1/16 of production when the deed was executed in 1951 (though, under the current lease, it amounts to 1/10 of production). Because the second clause simply

_____

[6] Specifically, in order to receive 1/16 of production where the royalty is 1/5, the royalty owner would have a 5/16 interest in the royalty, not a 1/2 interest.

8

describes the effect of the first, the percentage of production will necessarily change based upon the royalty in effect at any given time. As such, both clauses are given effect regardless of the terms of any applicable lease agreement. By contrast, if the Bryan successors are entitled to only a fixed 1/16 of production, the statement in the deed purporting to reserve a 1/2 interest in and to the royalty is no longer true when the royalty deviates from 1/8.

The sentence's grammatical structure further bolsters our interpretation. We note that "the same being equal to one-sixteenth (1/16) of the production" is offset by a comma, indicating a nonrestrictive dependent clause. Such a clause "gives additional description or information that is incidental to the central meaning of the sentence" and "that could be taken out of the sentence without changing its essential meaning." BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE § 1.6(a), at 6 (3d ed. 2013); *accord* BRYAN A. GARNER, THE ELEMENTS OF LEGAL STYLE 140–41 (1991). The court of appeals' emphasis on this clause improperly makes it essential to the sentence rather than incidental. To be clear, we do not imply that the use of a single comma is the dispositive consideration here. We simply recognize that the sentence's grammatical structure is consistent with the interpretation that gives effect to all of its parts.

The dissent criticizes our "foundational conclusion" that the first clause, read independently, reserves a floating royalty interest equal to one-half of the royalty contained in the oil and gas lease in effect. *Post* at ___. The dissent notes that a clause "expressing a single fraction with a reference to a 'royalty,' can describe either a fixed or a floating royalty interest" and argues that we resolve the first clause's meaning "without any analysis." *Id.* at ___ (footnote omitted).

To the contrary, in accordance with well-settled interpretation principles, we analyze the specific language the parties chose.[7]

As discussed, the parties chose to tie the reserved interest to the royalty, generally defined as "the landowner's share of production, free of expenses of production." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996); *see also State Nat'l Bank v. Morgan*, 143 S.W.2d 757, 761 (Tex. 1940). In turn, the royalty rate necessarily depends on the terms of the oil and gas lease in effect. The dissent is "certain that the Bryans understood the first clause's reference to 'the Oil Royalty' to refer to a 1/8 royalty," and "[n]o other language indicates . . . that they intended the reserved amount to change if a future lease provided for a different royalty." *Post* at ___.[8] But this construction ignores the fact that the parties reserved 1/2 of the "[r]oyalty" with no language indicating that the parties intended to limit the rate to the 1/8 that was commonly used at the time. *See Schlittler*, 101 S.W.2d at 544–45. We recognized in *Hysaw* that "the possibility that the parties were operating under the assumption that future royalties would remain 1/8 will not alter clear and unambiguous language that can otherwise be harmonized." 483 S.W.3d at 10. Again, interpreting the deed to reserve a floating royalty interest harmonizes both clauses of the reservation, while the dissent's view would render the first clause meaningless when the applicable lease agreement provides for any royalty other than 1/8.

---

[7] Unremarkably, the dissent cites various cases reaching different results on whether a reserved royalty was fixed or floating based on the language used. *Post* at ___. We fail to see how those results call into question our analysis of the language used here.

[8] The dissent's discussion of the Bryans' intentions regarding a *future* lease providing for a *different* royalty is curious in light of the dissent's recognition that no lease was in effect providing for any royalty at the time the deed was executed. *See id.* at ___.

10

The dissent's reliance on the absence of language indicating that the parties believed the royalty could change in the future is misplaced for two additional reasons. First, although the deed does not contain explicit language indicating that the *royalty rate* might change, neither does it contain language indicating that the reserved *1/2 interest* might change. Yet, the reserved interest would have to change (here, from 1/2 to 5/16) in order to remain consistent with 1/16 of production. Thus, the absence of such language simply does not support either construction. More importantly, because the deed's language clearly tied the interest reserved to the royalty itself, an explicit statement that the percentage of production owed would change along with the royalty would have been superfluous. Rules of construction do not require enunciation of the obvious.

In sum, the court of appeals' interpretation—that the deed reserved a fixed royalty— improperly ignores the parties' choice to link the reserved interest to the royalty in effect at any given time. Further, it allows one clause of the reservation to render the other meaningless. By contrast, construing the deed to reserve a floating royalty interest properly harmonizes the deed's pertinent language.[9] Under this interpretation, neither clause of the reservation is nugatory because both are given proper grammatical and practical effect. We therefore hold that the Bryan deed reserved a floating 1/2 royalty interest.

---

[9] In *Brown v. Havard*, we examined a deed reserving an "undivided one-half non-participating royalty (Being equal to, not less than an undivided 1/16th) of all the oil, gas and other minerals, in, to and under or that may be produced from said land." 593 S.W.2d at 940. We held that the use of the parenthetical rendered the clause ambiguous, noting that (1) it appeared to simultaneously reserve both one-half of all minerals and one-half of the royalties and (2) the parenthetical phrase could connote reservation of either a fixed 1/16 interest or 1/2 of the royalties in future leases (with such share not to fall below 1/16). *Id.* at 942. The reservation clause in the *Brown* deed was thus problematic on several levels, rendering it unclear what type of interest (mineral vs. nonparticipating royalty interest) was even being reserved. Although the reservation clause at issue here bears some similarity to that in *Brown*, it is sufficiently distinguishable, both in the language used and in grammatical structure, that we do not find *Brown*'s holding dispositive.

### III. Conclusion

Because the Bryan deed unambiguously reserved a floating 1/2 royalty interest, the trial court correctly granted summary judgment for the Bryan successors.  Accordingly, we reverse the court of appeals' judgment and reinstate the judgment of the trial court.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 29, 2018