C. S. FINLEY et al., Appellants,

v.

G. D. SPRADLEY et ux., Appellees.

No. 6901.

Court of Civil Appeals of Texas.

Texarkana.

Sept. 6, 1956.

Rehearing Denied Oct. 18, 1956.

Turner & Bankhead, Carthage, for appellants.

Wardlow Lane, Center, for appellees.

DAVIS, Justice.

This is a declaratory judgment suit to determine the effects of two "term" mineral deeds in connection with certain oil and gas leases. The facts are stipulated and are as follows:

On July 22, 1936, G. D. Spradley and wife, Iva Spradley, conveyed to W. T. Bourn, Trustee, an undivided 15 acre mineral interest out of two tracts of land containing 97.3 and 20.4 acres situated in the E. W. Gibbs Headright Survey in Panola County, Texas. Immediately following the description of the two tracts, said mineral deed contains the following provision:

"It is agreed and understood, and is a part of the consideration herein that if oil, gas or other minerals is not being produced from said lands above described at the expiration of 15 years from date hereof, this instrument to be null and void and all titles conveyed hereby shall revert to the grantor, their heirs or assigns".

On July 31, 1945, C. S. Finley, individually, and as attorney-in-fact for and in behalf of a partnership composed of several persons as successors in title to W. T. Bourn, Trustee, deceased, executed to W. H. Oberthier and oil, gas and mineral lease covering the foregoing 15 acre mineral interest. This lease contained the following pooling provision necessary to the disposition of this case:

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee promote the conservation of the oil and gas in and under and that may be produced from said premises. Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, Lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved."

On July 27, 1936, G. D. Spradley and wife conveyed to C. R. LaGrone a mineral deed to 14.43 mineral acres interest in and to the same 97.3 and 20.4 acre tracts of land out of which the foregoing 15 acre mineral interest was conveyed and said mineral deed contained the same 15 year term provision as contained in the mineral deed to W. T. Bourn, Trustee.

On May 9, 1945, C. R. LaGrone conveyed to W. H. Oberthier an oil, gas and mineral lease covering the 14.43 mineral acre in-

terest out of said tracts of land and said lease contained the same pooling provision as contained in the Finley-Oberthier lease hereinabove quoted.

On August 13, 1945, G. D. Spradley and wife conveyed to M. Ascher an oil, gas and mineral lease upon four tracts of land situated in Panola County, Texas, two of which were the 97.3 and the 20.4 acre tracts out of which the foregoing minerals were conveyed, and an additional 82 acre tract out of the Hampton Anderson Survey, and 47 acres out of the P. F. Gibbs Survey. Immediately following the descriptions of the four tracts the lease contains the following provision:

"Less 14 acres sold out of the above tract to C. R. LaGrone and less 15 acres sold out of said tract to Tom Bourne as shown by deed records of Panola County, Texas,—Leaving Herein a Total of 216.7 Acres of Land Conveyed in This Lease." Then immediately following this provision we find the following "catch-all" or "mother-hubbard" clause:

"It being lessors intention herein to lease all of the lands owned by lessor in the E. W. Gibbs, Hampton Anderson and P. F. Gibbs Surveys in Panola County, Texas whether clearly described herein or not." Then follows a statement that the lease contains 216.70 acres, more or less.

This lease also contains an identical pooling provision as contained in the Finley-Oberthier lease hereinabove quoted.

Each of the above leases were assigned, in due course, to Skelly Oil Company prior to February 23, 1949. On February 23, 1949, Skelly Oil Company, in keeping with, pursuant to and in conformity with the pooling provisions contained in the three foregoing leases, executed, published and recorded a Declaration of Consolidation and Unitization of all the minerals described in the foregoing mineral deeds and leases with other lands and minerals with-

in the immediate vicinity of the minerals in question; the total contiguous area being comprised of 699.79 acres, more or less, for the purpose of drilling a gas and distillate well.

A gas and distillate well was completed in the unit on October 21, 1949. The well was situated on the 82 acre tract in the Hampton Anderson Survey and being one of the tracts described in the Spradley-Ascher lease. The unit was formed for the purpose of drilling a single well. The well was not drilled upon either of the tracts from which Spradley conveyed minerals to LaGrone or Bourn. Gas and distillate has been continuously produced in paying quantities from said well from October 21, 1949, to and including the date of the trial of this case.

Sometime after the expiration of the 15 year term stipulated in the foregoing mineral deeds a controversy arose between Spradley and wife and LaGrone and the successors in title to the W. T. Bourn, Trustee, minerals; Spradley contending that there had been no production of minerals from the land described in the mineral deeds and that all royalties paid on such minerals after such 15 year period of time were due and payable to them, the Spradleys. Skelly Oil Company ceased paying royalties on the 15 and 14.43 acres mineral interests and C. S. Finley and the other successors in title of W. T. Bourn, Trustee, deceased, and C. R. LaGrone filed their petition in the form of a Declaratory Judgment suit to determine whether or not the production of gas under the foregoing mineral deeds and oil, gas and mineral leases constituted production from the tracts of land described in said mineral deeds so as to entitle them to continue to receive the royalties upon such mineral interests so long as gas and/or distillate are produced in paying quantities.

Trial was to the court, without a jury, who found that the mineral deeds in question gave no right to the grantees to pool or unitize such interests beyond the 15

year limit provided in the respective mineral deeds and decreed that all royalties accruing under the respective mineral deeds prior to the expiration of said 15 year periods belong to LaGrone and successors to the Bourn interests, but that all royalties accruing after such 15 year periods was the property of the Spradleys.

From this judgment, plaintiffs-appellants have duly perfected their appeal and bring forward two points of error. By point 1 appellants complain of the action of the trial court in not holding that the "catch-all" or "mother-hubbard" clause contained in the Spradley lease constituted a joint lease upon the minerals in question. A discussion of this matter is neither pertinent or necessary to the disposition of this case. The point is without merit and is respectfully overruled.

By point 2 appellants complain of the action of the trial court in holding that production of gas and gas distillate from the unit so pooled, or unitized, did not constitute production from the lands under which the minerals in question were situated; such production being continuously from a date prior to the expiration of the 15 year terms in the mineral deeds until the date of the trial. This point is well taken and must be sustained.

It will be noted that the trial court found and decreed that appellants were entitled to all royalties accruing under the leases in proportion to their interest in relation to the entire unit until the expiration of the 15 year terms. The trial court then found and decreed that after the 15 year terms, all royalties accruing under the same leases belonged to the appellees. There is no contention by appellees that the leases upon the minerals involved terminated at the end of the 15 year terms. On the contrary, appellees recognized these leases by appellants to be valid and binding and claim only the proportionate royalties from the entire unit.

The pooling or unitizing of mineral interests is a well recognized method of capturing minerals for the purpose of preventing waste and for conservation. A most informative discussion of the history of unitization is found in 1-A Summers Oil and Gas 140, sec. 104. And in 1-A Summers Oil and Gas 285, sec. 136 we find the following statement: "Unitization may have the effect of extending the duration of such a separate estate or interest beyond the definite term, although oil or gas is not produced from the land during the definite term * * *." See also, 3 Summers Oil and Gas 517, sec. 608.

When several leases are executed containing pooling or unitization agreements, the lessors are regarded as pooling their respective interests under a single lease and production from either tract so pooled or unitized constitutes production from each tract in the unit. 31-A Tex. Jur. 187, sec. 115, and authorities there cited, including pocket part and supplement; 31-A Tex. Jur. 836, sec. 482 and authorities there cited, including pocket part and supplement. The facts of Southland Royalty Company v. Humble Oil & Refining Company, 151 Tex. 324, 249 S.W. 2d 914, is a different fact situation from the standpoint of the formation of the unit but the principle of law applied there is the same.

The appellees contend that the Southland Royalty Company case is authority for their contention that the royalty under the leases reverted to them at the expiration of the 15 year terms, because (1) no authority was granted in the mineral deeds to pool such interests; and, (2) they expressly excepted such interests from the lease they executed. (1) There being no restriction in the mineral deeds, the grantees had a perfect right to enter into the pooling agreement for a unitization of their interests. Anything that is not expressly prohibited by law or contract is expressly permitted. (2) The Spradleys didn't own the mineral interests involved at the time they executed their lease and had no right to lease same. The exception was necessary to protect them on their warranty.

Even though the well drilled in the unit was not drilled upon either tract from which the minerals were conveyed, production from the well within the unit constituted and constitutes production from the mineral interests involved during the specific terms of the mineral deeds and so long thereafter as such gas and/or distillate is produced from such unit in paying quantities.

The judgment of the trial court is reversed and judgment is here rendered for appellants.

### On Motion for Rehearing.

Appellees have filed an able, courteous and forceful motion for rehearing and among other things requested that we find as a fact that "Appellees did not in the three instruments executed by them expressly permit the unitization or pooling of the mineral interest in question in which they had a 'possibility of reversion' mineral interest." It is true and we do so find that no "express, or specific", permission was granted by the conveyances for the grantees to pool the mineral interest in question. But, there being no restrictions placed thereon, the grantees in the mineral deed, as pointed out in our original opinion, had the unlimited authority to do anything with their property that they saw fit to do. A careful examination of the very instrument which appellees contend they excepted the mineral interest from, the oil, gas and mineral lease, contains a provision authorizing the pooling of the minerals conveyed by the lease with any other minerals, which we find included the right to pool with the minerals that appellees had already conveyed.

We further find that if appellants did not have the authority to pool the minerals in question that the present holders of the mineral leases on the minerals involved would be necessary and indispensable parties to this suit as probably would be others within the unit.

We appreciate the able and courteous manner in which this motion for rehearing is presented and regret that we are unable to agree with able counsel in his position and view of the law.

Feeling that we have correctly disposed of the case, the motion for rehearing is respectfully overruled.