## G. D. SPRADLEY ET UX v. C. S. FINLEY ET AL.

No. A-6096. Decided March 13, 1957.
Rehearing overruled June 12, 1957.
(302 S.W. 2d Series 409.)

*Wardlow Lane,* of Center, for petitioners.

*Turner & Bankhead,* of Carthage, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

The question posed here is whether or not a conveyance of an undivided mineral interest for a term of years is continued in force after the expiration of the term by reason of production elsewhere on land unitized or pooled with this mineral interest.

The trial court concluded that the title to the mineral interest had not been postponed beyond the term expressly stated in the conveyance. The Court of Civil Appeals held to the contrary and reversed and rendered. 294 S.W. 2d 750. We agree with the latter result.

In 1936 petitioners, Spradley and wife, conveyed to La-Grone and W. T. Bourn, trustee, by separate deeds, 14.43 and 15 acre undivided mineral interest, respectively, out of two tracts of land in the Gibbs Survey, Panola County, one being 97.3 acres, the other 20.4 acres, with the provision "that if oil, gas or other minerals is not being produced from said lands above described at the expiration of 15 years from date hereof, this instrument to be null and void and all titles conveyed hereby shall revert to the grantor, their heirs and assigns."

Thereafter, in 1945, the owners of these mineral interests executed oil and gas leases upon the property, each lease containing the usual pooling agreement. Contemporaneously with the execution of these two leases the Spradleys gave an oil and gas lease on the 97.3 and 20.4 acre tracts and two other tracts that comprised 119 acres and provided in their lease a similar pooling agreement. These three leases were thereafter regularly assigned to Skelly Oil Company. Skelly then, by declaration, pooled and unitized the lands covered by these three leases with eleven other leased tracts into one unit for the production of gas, distillate and condensate and designated it as the Werner-Spradley unit. A producing well was completed on land embraced within this unit within the 15-year term (but not on the two tracts out of the Gibbs Survey) that has produced continuously up to the present time.

Skelly paid to the respondents royalties in proportion to the acreage owned by them up to the end of the 15-year period and not thereafter. They then brought this suit praying that the court construe the mineral deeds and leases and adjudicate the rights of the parties as to the ownership of the undivided mineral interest conveyed by petitioners to respondents.

The lease above mentioned from Spradley and wife contained the following provision:

"Less 14.43 acres sold out of above tract to C. R. LaGrone and less 15 acres sold out of said tract to Tom Bourne as shown by deed records Panola County, Texas,—LEAVING HEREIN A TOTAL of 216.7 ACRES OF LAND CONVEYED IN THIS LEASE.

"It being lessors intention herein to lease all of the lands owned by lessor on the E. W. Gibbs, Hampton Anderson and P. F. Gibbs Surveys, in Panola County, Texas, whether correctly described herein or not."

The petitioners, Spradley, contend that the Court of Civil Appeals erred in holding that production upon any portion of the unitized tract must be treated as production from the 20.4 and 97.3 acre tracts so as to extend the term of respondents' estates, for the reason that petitioners did not include in the lease their reversionary interest but expressly excluded it and that, therefore, this right of reverter was not unitized or pooled with respondents' property.

■ We think it is immaterial to a decision in this case as to whether or not the Spradleys included or excluded the right of reverter from the terms of the lease granted by them.

The Spradley lease as well as the LaGrone and Bourn leases contain the following provisions:

" 'Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.'

" 'Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises.'

" 'If production is found on the pooled acreage it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not.' "

Petitioners do not challenge the right of respondents to the royalties paid them according to their respective interests during the 15-year term. But the only right of the respondents to those royalties was by reason of the pooling agreement to treat production from any portion of the unit as the equivalent of production from the 97.3 and 20.4 acre tracts. It must be conceded that if production had been obtained from wells drilled upon these two tracts then the 15-year term would have been extended so long as production continued. It would seem to follow, therefore, that if production from another part of the unit is treated as production from these two tracts so as to entitle respondents to royalty payments during the 15-year term, then equally so it would be regarded as production from the two tracts so as to extend the term. The interests owned by LaGrone and Bourn were undivided interests in the whole of the two tracts.

In Southland Royalty Co. et al v. Humble Oil & Refining Co., 151 Texas 324, 249 S.W. 2d 914, the Court held that a general form lease executed by the various owners had the effect of unitizing the lands described for development and production purposes and followed the decisions in Parker v. Parker, Texas Civ. App., 144 S.W. 2d 303 (wr. ref.) and French v. George, Texas Civ. App., 159 S.W. 2d 566 (wr. ref.). Here we have unitization and pooling specifically provided for.

■ Petitioner seems not to deny the effect of the Southland decision, but he maintains that it does not govern our case because in the last paragraph the court says: "We know of nothing in our holding to prevent reversionary owners — as there was nothing to prevent the Powells here — from protecting their estates by express stipulation." Petitioner claims he did just that, when he inserted the clause in his lease, that he says had the effect of excluding from the lease his reversionary interest. What the court means in the above quotation is that an owner who joins in a lease could by stipulation except his estate whether it be reversionary or not from an implied pooling agreement by express stipulation to that effect. In other words a landowner joining in a unitized lease may stipulate that production from one tract included therein. shall not be treated as production from any other tract for the purpose of

determining rights under another instrument affecting the title to the latter tract or any part thereof or interest therein. The two mineral deeds now under consideration do not provide for the termination of the grantees' estates if minerals are not produced from the undivided interests thereby conveyed, and so it matters not whether the reversionary rights to such undivided interests were excepted from or included within the terms of the lease.

Each conveyance describes the 20.4 acre tract and the 97.3 acre tract by metes and bounds, or by reference to a prior deed containing that description, and provides for the termination of the estates conveyed if minerals are not produced "from said lands" within the 15-year term. "Said lands" clearly refers to the 20.4 acre tract and the 97.3 acre tract. Under the authority of the pooling provisions in the leases, these two tracts have been unitized with other land and there was production from such other land during the crucial 15-year term. The case falls within the rule announced by the Southland Royalty case. By the execution of the leases the Spradleys and the owners of of the interests conveyed by the deeds agreed that the production of minerals from a tract included in a pool unit would be regarded during the life of the lease as production from all of the other tracts included in such unit. The condition upon which the grant in the mineral deed was to extend beyond the 15-year term was thus modified by agreement of the parties, and was fulfilled by production of minerals from the land with which the 20.4 and 97.3 acre tracts were unitized.

The judgment of the Court of Civil Appeals is accordingly affirmed.

Opinion delivered March 13, 1957.

MR. JUSTICE GRIFFITH joined by JUSTICE SMITH, dissenting.

I respectfully dissent from the majority opinion herein. The majority opinion sets out that in 1936 the Spradleys, petitioners herein, and defendants in the trial court, conveyed by separate deeds an undivided 14.43 acres interest in the 117.7 acres of land to La Grone, and an undivided 15 acres interest in the same lands to W. T. Bourn, Trustee. The interest conveyed was for a limited term of 15 years and so long as production continued. In 1945, La Grone, and the successors in title to W. T. Bourn, Trustee, and the Spradleys, by separate instruments, each executed an oil and gas lease containing a pooling agreement on

these lands. The leases by La Grone and Bourn, successors, covered their respective undivided interests in this 117.7 acres. Since their rights were conditionally limited to the 15 year period only, they could not thus indefinitely extend their estate except upon production from their interest. The lease executed by the Spradleys by a specific reference excluded from the lease the 29.43 acres interest theretofore conveyed to La Grone and Bourn, Trustee.

The Spradley lease, by the description in the lease, enumerated four specific tracts of land by metes and bounds. Included in these tracts was "First Tract" which was 20.4 acres, and the "Fourth Tract" which was 97.3 acres. The other tracts covered 119 acres of additional land also owned by the Spradleys. At the end of the description we find the following reservation or exception:

"Less 14.43 acres sold out of above tract to C. R. LaGrone and less 15 acres sold out of said tract to Tom Bourne as shown by deed records Panola County, Texas,—LEAVING HEREIN A TOTAL OF 216.7 ACRES OF LAND CONVEYED IN THIS LEASE.

"It being lessors intention herein to lease all of the lands owned by lessors on the E. W. Gibbs, Hampton Anderson and P. F. Gibbs Surveys, in Panola County, Texas, whether correctly described herein or not."

The words capitalized were so capitalized in the original instrument. By this reservation or exception there was specifically excepted, reserved and excluded the 29.43 acres theretofore deeded to La Grone and W. T. Bourn. This is conclusively shown by the fact that such 29.43 acres were deducted from the total acreage of the four tracts specifically described in the lease instrument. That such was the intention of the parties is further shown by the words in capitals, to-wit: "LEAVING HEREIN A TOTAL OF 216.7 ACRE OF LAND CONVEYED IN THIS LEASE." How could it be more clearly shown that the lease did not cover the whole of such 29.43 acres interest? If a tract of land is excluded from the total acreage conveyed, it does not pass under the conveyance. This being true, the lessee in such lease and his assigns received no part of such 29.43 acres in so far as the Spradleys are concerned. The lease from the La Grone and Bourn successors could not affect or convey any of Spradley's interest in such 29.43 acres. The lease from the Spradleys specifically excluded such 29.43 acres

in so far as any title the Spradleys had in such 29.43 acres. How then did the lessees secure any of the Spradley interest in such 29.43 acres? The majority reasons that the deeds to Bourn and La Grone being for an undivided interest in the 20.4 acre tract and the 97.3 acre tract; the fact that the Spradley lease contained a pooling provision; plus the fact that the Bourn and La Grone leases covered such undivided interest, production any part of the 20.4 acre tract or from the 97.3 acre tract is production from the undivided 14.43 acre and the undivided 15 acre interest the Spradleys had conveyed away. This reasoning is true only in so far as Bourn and La Grone and their interests are concerned. The La Grone and Bourn leases, as well as the Spradley lease, contained the provision that production on any part of the pooled acreage "shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not." That provision bound the Spradleys as to *each and every acre covered by their lease,* but I cannot see how it could possibly be held to apply to land not covered by the Spradley lease. The Spradley interest in the undivided 14.43 and in the undivided 15 acres was expressly excluded from their lease by the portion of the lease which I have set out above. Not only was it expressly excluded by description, but also, to make doubly certain it did not pass, the Spradleys added up the acreage covered by their lease, saying: "LEAVING HEREIN A TOTAL OF 216.7 ACRES OF LAND CONVEYED IN THIS LEASE." The total of 216.7 acres will not include and does not include the undivided 14.43 acres nor the undivided 15 acre interest theretofore conveyed to La-Grone and Bourn. Therefore, the language in the Spradley lease to the effect that production from any part of the pooled acreage is production "from this lease" could not possibly cover Spradley's interest in the undivided 29.43 acres. This must be true because such undivided 29.43 acres was not a part of the land covered by the Spradley lease.

The case of Southland Royalty Co. v. Humble Oil & Refining Co., 1952, 151 Texas 324, 249 S.W. 2d 914, recognizes that a lessor may reserve his reversion from a lease by use of apt language. The case of Reynolds v. McMan Oil & Gas Co., 11 S.W. 2d 778, Com. App., 1928, in discussing the effect of exceptions and reservations in the lease involved in that case, and which holding of the Commission was expressly approved by the Supreme Court, states:

"* * * The extent, and possibly nature, of an estate granted may be dependent upon an exception or reservation in the deed,

and the construction and operation of both the grant and the exception or reservation must be determined from the entire instrument, taking into consideration the object and purposes of the instrument. The office of an exception is to take something out of the thing granted that would otherwise pass, and the exception, as an estate, is of a kind with that granted; whereas a reservation carves out of the grant a new thing or estate, and it therein differs from an exception which is ever a part of the thing granted and of a thing in esse at the time. 18 C.J., p. 337, Sec. 337; Id., p. 340, Sec. 339. Simply illustrated, a grant of block 5 except lot 1 is an exception; whereas a grant of block 5 with a life estate to the grantor is a reservation. For the purpose of determining the extent of the grant, however, the distinction between exceptions and reservations is of no practical importance, since whether the one or the other the *property excepted or the state reserved is never included in the grant.*

The emphasis was in the court's opinion and not added by me.

Further the cases of King v. First Nat. Bank of Wichita Falls, 1946, 144 Texas 583, 192 S.W. 2d 260, (1); 163 A.L.R. 1128; the case of Gibson v. Turner, 1956, 156 Texas 289, 294 S.W. 2d 781, 788, 1st. col., expressly held that "* * * the property excepted or the estate reserved is never included in the grant. Each is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant. * * *" To the same effect see American Law of Property, Vol. III, pp. 294 and 295, Sec. 12.48; 26 C.J.S., Sec. 137, pp. 993 et. seq.; Id., p. 1018, Sec. 140 (7) b, bot. of 1st. col. and top of 2nd. col.; 14-B Texas Jur. 714, et seq., Sec. 247; 16 Am. Jur. 607, et seq., Sec. 298.

These 29.43 acres being expressly excluded under the Spradley lease and never passing to the lessees, it must follow that in so far as the Spradleys are concerned, production from other lands included in the pool could not be production from this 29.43 acres interest.

The pooling declaration executed by Skelly in 1949 included the Spradley lease by referring to the volume and page of its record "for all purposes." Neither Skelly, by its action, nor La-Grone by his action, nor Bourn by his successors, could include Spradley's interest in the 29.43 acres which was specifically excluded from Spradley's lease. It takes some action by the

owners of an interest in lands to convey any right, title and interest in such lands. Third parties cannot effect such interest. At least, that has always been the law in Texas, and, in my opinion, still is and ought to be the law.

While the Court of Civil Appeals overruled the contention of respondents that such interest passed under the "Mother Hubbard" clause, and the majority opinion does not base its holding thereon, I am of the opinion that such clause could not convey the 29.43 acres of land expressly excluded by the terms of the Spradley lease. We recently decided, in the case of Smith v. Allison, this volume p. _____, 301 S.W. 2d 608, that the purpose of the Mother Hubbard clause is to prevent leaving small unleased pieces or strips of land which may exist without the knowledge of one or both of the parties by reason of incorrect surveying, careless location of fences, or other mistakes, citing Sun Oil Co. v. Bennett, 1935, 125 Texas 540, 84 S.W. 2d 447; Sun Oil Co. v. Burns, 1935, 125 Texas 549, 84 S.W. 2d 442; Cantley v. Gulf Production Company, 1940, 135 Texas 339, 143 S.W. 2d 912, 915. In the face of an express reservation, I do not see how it can be contended that the land reserved passes under a Mother Hubbard clause.

I would reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

Opinion delivered March 13, 1957.

Rehearing overruled June 12, 1957.