**GUARANTY NATIONAL BANK AND TRUST OF CORPUS CHRISTI, Texas, et al., Appellants,**

v.

**C. C. MAY et ux., Appellees.**

**No. 872.**

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1974.

William L. Bloch, Rockport; Linward Shivers, Austin, for appellants.

Nelson R. Sharpe, Glusing & Sharpe, Kingsville, for appellees.

## OPINION

YOUNG, Justice.

This is a suit brought by Mr. & Mrs. C. C. May, against Guaranty National Bank and Trust, Trustee, for a declaratory judgment that the term mineral interest reserved by deed in two tracts of land be declared terminated. Trial was to the court without a jury. The case was presented solely by means of stipulated facts. At the conclusion of the trial, the judge ruled that the term mineral interest had terminated. Guaranty Bank has appealed from this ruling.

The land which comprises the subject matter of this lawsuit has been involved in two prior decisions by Texas Courts of Civil Appeals. Guaranty National Bank and Trust of Corpus Christi v. May, 395 S.W.2d 80 (Tex.Civ.App.—Waco 1965, n. r. e.); May v. Cities Service Oil Company, 444 S.W.2d 822 (Tex.Civ.App.—Beaumont 1969, n. r. e.). Both of these prior cases involved distribution of royalties under a lease dated March 12, 1958. In the case before us the same lease is present; the question presented, however, is directed to the duration of certain term interests within the lease.

The facts were all stipulated and are undisputed. In the mid-1940's C. C. May and his wife made several land purchases. The end result of these purchases was a tract of land, roughly 400 acres, depicted in the following plat:

```
┌─────────────────────┐
│ TRACT 2             │
│                     │         ↑
│ MAY    1/2          │
│                     │
│ BROOKSHIRE          │       North
│         1/2         │
│ 40 acres            │
├──────────┬──────────────────────────┐
│ TRACT 1  │ TRACT 3      │ TRACT 4    │
│          │   •          │            │
│          │  1-A         │            │
│          │ MAY  1/2     │ MAY    1/2 │
│   MAY    │ KOCH  1/2    │ BROOKSHIRE  1/2 │
│   •      │              │            │
│  2-A     │              │            │
│          │              │            │
│ 80 acres │ 80 acres     │ 160 acres  │
└──────────┴──────────┬───┴────────────┘
           │ TRACT 5  │
           │ MAY  1/2 │
           │ HAMPTON 1/2 │
           │          │   } 20 acres from Hampton tract
           │ 40 acres │     within Schoenfeld unit
           │          │
           │Producing │   ─────────  May lease
           │   ⊗      │              (401.22 acres)
           │  Well    │   ─ ─ ─ ─ ─  Schoenfeld unit
           │          │              (80 acres)
```

May held the surface and the executive rights to all the tracts which comprised the 401.22 acres. In addition, May owned all the royalty under tract # 1. In the deed

from Brookshire to May, Brookshire reserved a ½ royalty interest under tracts # 2 and # 4. The reservation in the deed from Brookshire to May dated July 15, 1944, states:

"SAVE AND EXCEPT, however, and the grantors herein do expressly reserve out of this conveyance for ourselves, (sic) our heirs and assigns, *for a period of twenty (20) years from the date hereof, unless oil, gas or other minerals are being produced at that time in paying quantities, an undivided one-sixteenth (¹⁄₁₆th) interest* in and to all the oil, gas and other minerals in, on or under, or that may be produced from said tract of land, we, the said B. C. Brookshire and wife, Addie Brookshire, our heirs and assigns, shall retain and receive an undivided one-sixteenth (¹⁄₁₆th) of the entire net production from all such oil, gas and other minerals produced and saved from said tract of land, free of cost of production. *It is expressly agreed and understood that the interest hereby reserved is a royalty interest,* and we, the said B. C. Brookshire and wife, Addie Brookshire, shall not hereafter be entitled to any bonus or rental payments under any oil, gas and mineral lease on said tract, nor shall it be necessary for us, our heirs or assigns, to join in the execution of any such lease or leases. *If, at the expiration of twenty (20) years from the date hereof, no oil, gas or other minerals are being produced on said land, then, and in that event, this reservation and retention of a ¹⁄₁₆th of the minerals shall be and become null and void and of no further force and effect* and shall revert to and become the property of the owner of the surface of said land." (emphasis supplied.)

On March 12, 1958, May executed a single oil and gas lease covering all five tracts. The lease was for a three year primary term, contained a broadly worded pooling clause, and provided for extension of the lease beyond the primary term for ". . . as long thereafter as oil, gas or

other mineral is produced from said land or land with which said land is pooled." This lease was extended by a producing well on tract # 3 (royalties from this well were the subject of Guaranty National Bank v. May, supra). In January 1965 a second well was drilled to completion on tract # 1 (royalties from this well were the subject matter of May v. Cities Service Oil Co., supra). Neither of these wells is presently in production; the lease, however, is still held by a producing well (Schoenfeld well) located off the 401.22 acres but which is on an 80 acre pooled unit (Schoenfeld unit) which includes 20 acres of tract # 5. It has been stipulated that for one year prior to the filing of this suit there has not been any producing well either on the premises covered by the lease nor in a unit which includes any part of tracts # 2 and # 4.

The Mays brought this suit for a construction of the terms of the deed and to have the Brookshire term royalty interest terminated. Guaranty Bank is a successor to the Brookshire royalty interest. They occupy this position as the trustee of a charitable foundation which holds this term interest as part of its assets. As a result, the State of Texas has joined as a necessary party defendant with the Guaranty Bank pursuant to Art. 4412a, Vernon's Ann.Civ.St.

The sole question presented at the trial was whether the term royalty interest had expired. The trial court determined that the royalty interest, reserved by Brookshire, was now ". . . null and void and of no further force and effect. . . ." The result of this judgment is that, as to tracts # 2 and # 4, the ½ royalty interest reverts to May by the terms of the original reservation.

Appellant attacks this judgment with two points of error. First, the Bank argues that the terms of the reservation grant a "perpetual" interest if oil or gas was being produced on July 15, 1964, from any acreage under lease. Since it is uncontro-

verted that there was a producing well on the lease at that time, the bank argues that the Brookshire interest could not thereafter terminate. Second, the Bank argues that the Bank's royalty is spread throughout the lease by communitization. Therefore, production from the Schoenfeld well and unit which holds the lease also inures to the benefit of the royalty interest owner despite the fact that all of his land lies outside of the unit. Thus, the argument goes, production on land in the Schoenfeld pool is the same as production on tract # 5 and since the lease is communitized, production on tract # 5 is the same as on tracts #2 and # 4. We will address ourselves to each of these contentions separately.

By its judgment the trial court rejected the appellants' position that the reservation was "perpetual" if production existed at the end of the twenty year period. We agree with the trial court. It will be noted from the quoted reservation that there is no " . . . as long thereafter . . . " clause which clause would tend to limit the length of the term interest to an event beyond the 20 year period. Despite this omission we do not believe that the language of the instrument manifests an intent to create a royalty interest which could become perpetual.

■ There is no question of fraud, mistake, accident or ambiguity raised in this case. Thus the question of construction is one of law for the court to determine. Woods v. Sims, 154 Tex. 59, 273 S. W.2d 617 (1954); High v. Glameyer, 428 S.W.2d 872 (Tex.Civ.App.—Houston 14th Dist. 1968, n. r. e.); 19 Tex.Jur.2d, Deeds, § 106. The primary rule of deed construction is that the intent of the parties, if ascertained, will be given effect. Garrett v. Dils Company, 157 Tex. 94, 299 S.W.2d 904 (1957); Jones v. Sun Oil Co., 110 S. W.2d 80 (Tex.Civ.App.—Texarkana 1937, writ ref'd); Hidalgo County v. Pate, 443 S.W.2d 80 (Tex.Civ.App.—Corpus Christi 1969, n. r. e.). The term of the reservation is clearly set out " . . . for a pe-

riod of twenty (20) years from the date thereof, unless oil, gas or other minerals are being produced at that time. . . . " The parties then show an intent that the royalty interest would not be open-ended, "If, at the expiration of twenty (20) years from the date hereof, no oil, gas or other minerals are being produced, then, and in that event this reservation and retention of a 1/16th of the minerals shall be and become null and void and of no further force and effect and shall revert to and become the property of the owner of the surface of said land." The effect of this sentence is to terminate the estate after 20 years *and* when production has ceased. It is appellants' contention that the Brookshire interest could only terminate, if at all, on July 15, 1964; since there was production on that date, the interest lasts forever. We decline to accept such a narrow interpretation of this reservation.

■ Even if the intent of the parties is not as clear as it could be, the rules of construction demand that where there is any doubt as to proper construction of a deed, that doubt should be resolved against the grantor. Garrett v. Dils Co., supra; Victoria Bank & Trust Company v. Cooley, 417 S.W.2d 814 (Tex.Civ.App.—Houston 1967, n. r. e.); Clark v. Wisdom, 403 S.W.2d 877 (Tex.Civ.App.—Corpus Christi 1966, n. r. e.). This rule applies with equal force to a grantor who attempts to reserve an interest under the deed. Collier v. Caraway, 140 S.W.2d 910 (Tex.Civ.App.—Beaumont 1940, writ ref'd); Hidalgo County Water Control and Improvement District v. Hippchen, 233 F.2d 712 (5th Cir. 1956).

■ There is yet another reason to reject the appellants' construction favoring a perpetual reservation. The words "perpetual" or "forever" do not appear anywhere in the reservation. Nor is there an expression that could be even remotely construed to mean the same. As a result, the court would be forced to hold that the 20 year

term become "perpetual" by implication. Our Supreme Court has stated:

"A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication". Sharp v. Fowler, 151 Tex. 490, 252 S.W.2d 153 (Tex.Sup.1952).

Appellants' point of error number one is overruled.

Having determined that the term royalty interest will end when both 20 years have elapsed and production ceases, we next consider whether the Schoenfeld well can be considered production ". . . on said land . . ." so as to extend the term of the reservation.

Appellants' position, stated in point of error number two, is that its royalty interest under the 200 acres is spread throughout the entire 401.22 acres covered by the lease. Thus, the Bank argues, since the lease is held by production, there must be production on its interest which is spread throughout the lease. We cannot agree with this contention.

It should be noted at the outset that there is no dispute here that the Schoenfeld well extends the secondary term of the May lease. The lease contains the following language:

". . . Operations for drilling on or production of oil and gas from any part of the pooled unit which includes all or a portion of the land covered by this lease . . . shall be considered as operations . . . from land covered by this lease whether or not the well or wells be located on the premises covered by this lease, . . ."

Therefore the parties agree that the lease remains in force. The question is: Of what effect is the Schoenfeld well on the Brookshire royalty interest?

The single Texas case which confronted the same issue is Williamson v. Federal Land Bank of Houston, 326 S.W.2d 560 (Tex.Civ.App.—Texarkana 1959, n. r. e.). In that case Federal deeded four tracts of property to Williamson reserving a 1/16th

royalty interest. This interest would continue "forever" if oil or gas was produced "from said land" during the 20 years. Williamson executed three leases:

1. Lease A covering tracts # 1 and # 2.

2. Lease B covering tract # 3.

3. Lease C covering tract # 4.

Each of these leases contained broad pooling provisions. The various oil companies under these three leases created a gas unit. The unit included tracts # 2, # 3 and # 4. Federal joined in the creation of this unit by pooling its royalty interest. A well was brought in on the unit but not physically located on any of the three Williamson tracts. The question before the Texarkana court, as is before this Court, was whether the well extended the term royalty interest on tract # 1 which was included in a pooled lease but outside of a producing unit. The court in that case concluded that the 20 year term of tract # 1 *was* extended. The reason given was that subsequent to the deed all parties (the grantor, grantee and lessees) joined in creating the unit under the pooling clauses of the various leases. The court states at page 563:

". . . in the light of the subsequent instruments it should be held that 'said land' by virtue of being in a pooling unit which produced gas and condensate, either constructively or by contract 'produced' prior to May 13, 1955, which constructive or contract production from said land caused the royalty reservation in question of the Land Bank to vest permanently."

In *Williamson,* all four tracts were conveyed in a single deed. The court found that since the term reservation was extended to tracts within the unit, that same benefit extended to tract # 1 since the joinder agreement and the leases with broad pooling clauses showed an intent on the part of the parties to the deed to modify its terms. The court supports this result by citing two cases which are cited by both parties in the case before us. Spradley v. Finley, 157 Tex. 260, 302 S.W.2d 409 (Tex.Sup.

1957) and Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914 (1952).

In *Southland*, all of the owners of the mineral interest joined in a lease which contained three tracts. Southland owned a 20 year term royalty on tracts # 1 and # 2. Two producing wells were drilled on tract # 3. The question was whether these wells extended the term interests on tracts # 1 and # 2. The Supreme Court held that the terms were extended, with the statement at page 916:

" . . . the parties by the execution of a unitized lease agree that production of oil or gas from wells located on any tract included in the lease will be regarded during the life of the lease as production from each and all other tracts included therein.

\*   \*   \*   \*   \*   \*

. . . By joining in the lease they necessarily agreed to the legal consequence that production from any of the tracts would be regarded as production from all other included tracts."

It will be noted that *Southland* did not deal with precisely the same issue as is in the present case since the wells were drilled on land within the lease and there was no partial unitization.

In *Spradley*, the Supreme Court confronted a problem similar to *Southland* in which a pooled unit was involved. Fifteen year term mineral interests on two tracts were leased by both the term owners and the owners of the reversionary interest (the grantor). These leases all contained pooling agreements. The oil company, lessee, unitized these lands with several other tracts to form a gas unit. A producing well was completed within the unit but was not located on either of these two tracts. The Supreme Court held the term interest continued beyond 15 years stating:

" . . . The case falls within the rule announced by the Southland Royalty case. By the execution of the leases the Spradleys (Grantors) and the owners of the interests conveyed by the deeds agreed that production of minerals from a tract included in a pooled unit would be regarded during the life of the lease as production from all of the other tracts included in such unit."

The issue in *Spradley* is not exactly the same as is the issue before us since the term interest in our case is *not* within a pooled unit.

We now turn to the facts in our case. As previously mentioned, the Bank asserts that there is a unitization of interests under the May lease which spread its royalty throughout the 401.22 acres. After the lease was executed in 1958, Brookshire ratified the lease. Hampton also ratified the lease but placed an expressed provision therein that the instrument would *not* pool or unitize his royalty with royalty owned by others in the tracts covered by the lease. Koch did not immediately ratify the lease. A question arose as to the royalty distribution from a well on tract # 3. The Waco Court of Civil Appeals held that the lease was *not* communitized on two grounds: (1) failure of all parties to ratify the lease; and (2) estoppel of the Brookshire interest to assert communitization because they had been enriched by non-communitized benefits. Guaranty Nat. Bank & Trust of Corpus Christi v. May, supra.

After the Waco court decision, the well on tract # 3 ceased production and a well on tract # 1 was brought in. During this time a unit was formed by the operator which included tracts # 1, # 2, and # 3 and the west 48.6 acres of tract # 4. (See plat.) The Hampton tract was not assigned to this unit. Koch then ratified the lease and a question arose as to the distribution of royalties within the unit from the May # 2 well on tract # 3.

The litigation reached the Beaumont Court of Civil Appeals which held that the Koch ratification was valid and the royalties from May # 2 were to be distributed pro-rata throughout the unit. May v. Cities Service Oil Co., supra.

◼ We hold that as between Hampton and Brookshire there is no unitization of royalty interest under tract # 5 because Hampton's limited ratification expressly prevents·it. The result is that the Brookshire interest is *not* spread throughout the Hampton tract. The "legal consequence" of unitization, which the Supreme Court speaks of in *Southland*, that production from tract in a unitized lease will be regarded as production from each and all other tracts included therein, is never reached. The result would be no different if a well were drilled on the Hampton tract. There has been no cross conveyance of royalty interests between Hampton and Brookshire; thus, Hampton would not be obligated to share the royalties.

Our holding must be limited to these facts: If the Schoenfeld unit had included all or part of the Brookshire tract; or, if a producing well were brought in on tract # 3, then the above rules would clearly apply and the term would be extended. However, we are unwilling to extend these rules. Appellants' final point of error is overruled.

The judgment of the trial court is affirmed.