IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 92-4394

TEMPLE-INLAND FOREST PRODUCTS
CORPORATION,

                                        Plaintiff-Appellee,

                        versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(April 13, 1993)

Before Reynaldo G. GARZA, HIGGINBOTHAM, and Emilio M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This case turns on the construction of a 58-year-old deed under Texas law. In 1935, Temple-Inland's predecessor sold land in East Texas to the United States, reserving the mineral rights. This reservation was to expire in 1985, subject to extension on limited areas around commercial production. Temple's right to retain tracts that have become inactive since 1985 is now disputed. The district court granted summary judgment in favor of Temple. We disagree with the district court's interpretation of the deed, and reverse.

The facts are undisputed. By warranty deed dated December 27, 1935, Temple Lumber Co. conveyed to the United States 77,806 acres

in Sabine County, Texas. It is unknown which party drafted the deed.[1] Under its terms, Temple reserved all of the oil, gas and minerals on, in, or under roughly 59,983 acres. The pertinent paragraphs of the deed provide:

[1] There is hereby excepted and reserved from the foregoing sale and conveyance all the oil, gas, and other valuable minerals deposited on, in or under said lands, in accordance with the following clauses, rules and regulations, to-wit:

[2] Reserving to the vendor, its successors and assigns, for the period ending January 1, 1985, the right to prospect for, mine, and remove any and all gas, oil and mineral deposits on, in, or under said lands. The vendor, its lessees, successors, and assigns, shall have at any and all times full right to enter upon said lands for the purposes of prospecting for, mining, and removing gas, oil, and minerals.

[3] It is further provided that if on January 1, 1985, gas, oil and/or minerals are being produced on said land in commercial quantities, then and in that event the gas, oil and mineral reservations shall be extended on all areas within a one-half mile radius of each then existing gas or oil well or mineral operation. Such extension of gas, oil and mineral reservation shall run for a five year period from date of January 1, 1985.

[4] Provided further that said gas oil, and mineral reservations shall be extended by five year periods so long as commercial operations are being carried on at the end of the then current extension period.

[5] It is provided that at the end of the termination of the period ending January 1, 1985, if not as above provided extended, or at the termination of any extended period, if no commercial gas, oil or mineral operations are being carried on, then and in that event the right of the vendor, its lessees, successors and assigns to

---

[1]Temple introduced evidence in the record from which, it argues, it may be inferred that the United States chose the terms of the reservation provisions. The identification of the drafter is not material to our decision. We construe the deed as written and do not rely upon the presumption that the grantor, here Temple, drafted the deed.

prospect for, mine and remove gas oil, and minerals shall terminate.

On January 1, 1985, there was production of oil or gas in commercial quantities at only twenty-two sites in the conveyed land. Pursuant to paragraph three of the deed, Temple's mineral interest terminated as to all areas except twenty-two circles, each one mile in diameter and centered on a producing well. These circles encompassed 7,930 of the 59,983 acres reserved in 1935.

Five years later, on January 1, 1990, there were commercial operations at only six of the twenty-two sites. The government believed that Temple's mineral interest had terminated as to the other sixteen circular tracts and so notified Temple on May 21, 1990. The government then elicited public bids to lease these tracts.

Temple responded by filing this suit on October 16, 1990. Temple contended that so long as commercial operations are conducted on any of the twenty-two tracts as to which the mineral rights reservation was extended in 1985, Temple owns the mineral rights for all twenty-two. Both parties moved for summary judgment on the single legal issue in dispute: the meaning of the reservation paragraphs of the 1935 deed. The district court granted Temple's motion.

We review the question de novo. Under Texas law, interpreting an unambiguous contract presents a question of law, including determining whether the contract is ambiguous. REO Industries, Inc. v. Natural Gas Pipeline Co., 932 F.2d 447, 453 (5th Cir.

1991).[2]  A contract is not ambiguous because the parties disagree about its meaning.  Id.  Under Texas law, "[a]n instrument is ambiguous only when the application of pertinent rules of construction leaves it genuinely uncertain which one of two reasonable meanings is the proper one."  Prairie Producing Co. v. Schlachter, 786 S.W.2d 409, 413 (Tex. App.--Texarkana 1990, writ denied); see also Technical Consultant Services Inc. v. Lakewood Pipe, 861 F.2d 1357, 1362 (5th Cir. 1988).  We conclude that this deed is unambiguous, because the "language of the reservation . . . can be accorded a certain legal meaning by applying appropriate rules of construction."  Buffalo Ranch Co., Ltd. v. Thomason, 727 S.W.2d 331, 333 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Our duty when construing a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule.  Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991).  While Texas has relaxed the strict operation of its tenets of construction, see Harris v. Windsor, 294 S.W.2d 798, 800 (Tex. 1956), we refer to those rules to guide us in determining the intent expressed in the instrument. "The cannons of law for the construction of deeds are for the purpose of discovering the intent of the makers."  Humble Oil &

---

[2]This general rule applies to deeds.  Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986).

<u>Refining Co. v. Kirkindall</u>, 119 S.W.2d 731, 733 (Tex. Civ. App.--Beaumont 1938), <u>aff'd</u>, 145 S.W.2d 1074 (Tex. 1941).[3]

When interpreting the terms of a reservation, courts construe the language against the grantor. <u>State v. Dunn</u>, 574 S.W.2d 821, 824 (Tex. Civ. App.--Amarillo 1978, writ ref'd n.r.e.); <u>Cameron Cty. Water Control & Improvement Dist. v. George</u>, 349 S.W.2d 308, 310 (Tex. Civ. App.--Eastland 1961, writ ref'd n.r.e.); <u>Commerce Trust Co. v. Lyon</u>, 284 S.W.2d 920, 921 (Tex. Civ. App.--Fort Worth 1955, no writ); <u>Hidalgo Cty. Water Control & Improvement Dist. v. Hippchen</u>, 233 F.2d 712, 715 (5th Cir. 1956). Thus, when

> the intent of the parties is not as clear as it could be, the rules of construction demand that where there is any doubt as to proper construction of a deed, that doubt should be resolved against the grantor. This rule applies with equal force to a grantor who attempts to reserve an interest under the deed.

<u>Guaranty Nat'l Bank & Trust of Corpus Christi v. May</u>, 513 S.W.2d 613, 617 (Tex. Civ. App.--Corpus Christi 1974, no writ).[4]

---

[3]<u>Harris</u> noted the relaxation, not the abandonment, of rules of construction. Subsequent decisions continue to look to the tenets for guidance in determining expressed intent. <u>See</u>, <u>e.g.</u>, <u>Garrett v. Dils Co.</u>, 299 S.W.2d 904 (Tex. 1957)(noting relaxation of tenets in <u>Harris</u> and stating rule construing doubts against grantor).

[4]The rule construing deeds against grantors is often justified by attributing deeds' language to grantors. <u>See</u>, <u>e.g.</u>, <u>Garrett</u>, 299 S.W.2d at 906. We do not regard this as the only basis for the rule of construction. The need for specificity when reserving any interest from a conveyance also justifies construing reservations against the grantor. <u>See</u> <u>Sharp v. Fowler</u>, 252 S.W.2d 153 (Tex. 1952)(holding reservations must be stated by clear language); <u>Monroe v. Scott</u>, 707 S.W.2d 132 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.)(noting deed conveys all interests not expressly reserved).

A reservation must be stated by clear language. Courts do not favor reservations by implication. Sharp v. Fowler, 252 S.W.2d 153, 154 (Tex. 1952); Chambers v. Huggins, 709 S.W.2d 219, 222 (Tex. App.--Houston [14th Dist.] 1986, no writ); Guaranty Nat'l Bank v. May, 513 S.W.2d 613, 618 (Tex. Civ. App.--Corpus Christi 1974, no writ). The need to clearly state a reservation arises from the fact that a conveyance ordinarily passes to the grantee all of the grantor's interest in a property. See Phillips Petroleum Co. v. Adams, 513 F.2d 355, 362 (5th Cir.), cert. denied, 423 U.S. 930, 96 S. Ct. 281 (1975).[5] There is no question whether a reservation was expressly created. Rather, the dispute is over the termination terms of the reservation, and so how long Temple retained the interest.

The deed conveyed a present, possessory interest in the surface estate to the United States in 1935. It reserved, for a potentially unlimited time, all valuable minerals deposited on, in, or under that land and the right to exploit them. Thus, the deed severed the surface and mineral estates. See Moser v. United States Steel Corp., 676 S.W.2d 99, 101 (Tex. 1984); Humphreys-Mexia Co. v. Gammon, 254 S.W. 296, 299 (Tex. 1923). Temple retained a present interest in the mineral estate. Because that reserved interest was subject to termination, however, Temple conveyed a future reversionary interest in the mineral estate to the United

_____

[5]A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless reservations reduce the estate conveyed. Monroe v. Scott, 707 S.W.2d 132, 133 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.).

States. When a grantor reserves a determinable mineral interest, to be followed by vesting of the mineral interest in the grantee, the grantee receives at the time of the conveyance a reversionary interest. See Chambers v. Huggins, 709 S.W.2d 219, 222 (Tex. App.--Houston [14th Dist.] 1986, no writ).

We must construe the deed provisions that terminate Temple's possessory interest and give the United States a present interest in the minerals on the tracts. The parties offer competing interpretations of the deed. Temple contends that it expresses the intent to reserve the mineral rights until no commercial operations existed on any of the circular tracts created in 1985. The government maintains that the deed expresses the intent to terminate Temple's reservation as to each tract if no operations existed on that tract at the end of a five year period.

Despite able contrary arguments, we are persuaded that the latter interpretation properly construes the parties' expressed intent. The deed provides that Temple's original reservation would terminate in 1985, except as to certain areas. The parties agree that the operation of paragraph three preserved Temple's ownership of twenty-two tracts for another five years. The focus then shifts to paragraph four, which provides for the further extension of Temple's rights past January 1, 1990.

Paragraph four, like paragraph three, uses the plural term "reservations." Paragraph two created a single reservation in 1935--Temple's possessory mineral interest. The use of the plural term in the following paragraphs indicates that the extension

7

provision of paragraph three created discrete reservations in 1985. Temple's ownership of a 59,983 acre mineral estate became the ownership of the mineral interests on twenty-two tracts of roughly five-hundred-two acres apiece.[6]  The deed's plural language indicates that each of those tracts was held by Temple by a separate reservation.

Temple maintains that paragraph three created a single, non-contiguous reservation in 1985, subject to termination at one point in time.  We disagree.  The use of the plural term indicates that the extension provision of paragraph three created multiple reservations in 1985.  The subsequent extension provision in paragraph four applies to these discrete reservations.  Reasonably interpreted, the deed allows for these reservations to terminate at different times.

Temple's reading of the deed renders the five-year periods mandated by paragraph four nigh pointless.  We must examine the entire writing in an effort to harmonize and give effect to all its provisions so that none will be rendered meaningless.  Chapman v. Orange Rice Milling Co., 747 F.2d 981, 983 (5th Cir. 1984) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)); see also Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986) ("the parties to an instrument intend every clause to have some effect").  If the intended agreement were for Temple to retain ownership of all

_____

[6]The expected acreage of twenty-two circles one mile in diameter is 11,055 acres.  The fact that 7,983 acres remained in Temple's hands in 1985 indicates that some circles must be centered on production sites less than one mile apart and so overlap.

8

circular tracts until operations ceased upon all of them, the purpose of re-examining their status every five years is doubtful. Temple suggests that such periods allow it time to restore production somewhere if operations play out on all tracts. This suggestion does little for Temple, because the same is true if separate reservations are subject to separate termination. Then, too, established termination dates give warning and a chance for reworking. Giving paragraph four a more reasonable effect, we read it to provide for the incremental termination of reservations on circular tracts as operations cease on those tracts.

If a single reservation existed after 1985, commercial operations in 1990 on six tracts would support an extension of Temple's rights as to the sixteen non-producing tracts. Temple emphasizes the language of paragraph five:

> [A]t the end of the termination of the period ending January 1, 1985, if not as above provided extended, <u>or</u> at the termination of any extended period, if no commercial gas, oil or mineral operations <u>are being carried on</u>, then and in that event the right of the vendor . . . shall terminate. (Emphasis added.)

This paragraph, which Temples describes as "the only express provision for termination" of Temple's mineral interests, when read with paragraph three, arguably treats the twenty-two tracts reserved in 1985 as one collective interest. Recognizing that the plural term "reservations" indicates otherwise, Temple notes the singular terms used in the last sentence of paragraph three: "Such <u>extension</u> of gas, oil and mineral <u>reservation</u> shall run for a five year period from the date of January 1, 1985." (Emphasis added.)

9

Temple's observation is well taken. We must, however, harmonize each element of the deed rather than focusing on one sentence in isolation. The deed refers more than once to "reservations" existing after 1985. This language indicates that discrete tracts are individually reserved. We construe the last sentence of paragraph three to refer to the five-year extension of any one of those tracts, rather than collectively to all of them.

There is no clear language reserving the mineral rights as to the circular tracts that have ceased commercial operations. The requirement of a clear statement for reservations applies not only to whether a reservation was created, but to its endurance and termination. See Guaranty Nat'l Bank & Trust of Corpus Christi v. May, 513 S.W.2d 613 (Tex. Civ. App.--Corpus Christi 1974, no writ). In May, a 1944 deed reserved to the grantor of two tracts a royalty interest. The reservation was to expire in twenty years unless oil, gas, or minerals were being produced from "said land." The two tracts were adjacent to three others owned by the grantee, who leased the unit of five tracts in 1958. In 1964, there was production on the unit, although not on either tract conveyed by the grantor. The case required interpretation of the reservation's provision for termination. The grantor's successor argued that the reservation had become perpetual in 1964, because by its terms the reservation could only terminate at the end of twenty years. The court "decline[d] to accept such a narrow interpretation of this reservation." Id. at 617. There was no express statement that the reservation would endure only so long as production did. Yet that

10

was the evident intent, in the absence of language indicating that the reservation could last forever. The construction asserted in favor of the grantor required implication of such language, which the court refused to supply for a reservation. Id. at 617-18.

Each party noted that the deed could clearly express an intent either way if just a few words had been added to paragraph four.[7] Where "the intent of the parties is not as clear as it could be," doubt regarding a reservation must be resolved against the grantor. Id. at 617. Temple's arguments, in effect, would have us imply the meaning by mentally supplying words favorable to it. That interpretation would increase the temporal extent of the grantor's reservation and defer the grantee's right to possession. We construe the deed against the grantor and against broadening a reservation by implication, limiting the temporal scope of the discrete reservations created by the deed.

Seeking support in analogous factual circumstances, Temple refers to cases discussing the relinquishment of non-producing lease acreage. There, in the absence of language calling for a continual relinquishment, the general rule provides that production

_____

[7]Temple would prevail if paragraph four stated:
    Provided further that all said gas, oil, and mineral reservations shall be extended by five year periods so long as commercial operations are being carried on upon any of them at the end of the then current extension period.
Likewise, the government's construction could be more clearly stated:
    Provided further that each of said gas, oil, and mineral reservations shall be extended by five year periods so long as commercial operations are being carried on upon it at the end of the then current extension period.

11

anywhere on the leased premises maintains the lease.  See, e.g., Humphrey v. Seale, 716 S.W.2d 620, 622 (Tex. App.--Corpus Christi, 1986, no writ).  Temple also contends that when an instrument creates mineral interests in multiple tracts of land, subject to termination in the absence of production, production from one of the tracts will extend the interest in non-producing tracts as well.  See Mathews v. Sun Oil Co., 425 S.W.2d 330, 333 (Tex. 1968); e.g., Williamson v. Federal Land Bank of Houston, 326 S.W.2d 560 (Tex. Civ. App.--Texarkana 1959, writ ref'd n.r.e.); Hillegust v. Amerada Petroleum Corp., 282 S.W.2d 892 (Tex. Civ. App.--Beaumont 1955, writ ref'd n.r.e.).

In Williamson, a grantor sold four non-contiguous tracts of land.  The deed reserved a non-participating royalty interest in "said land" that would permanently vest if mineral production occurred within twenty years.  In dicta, the court stated that had production occurred within the period on any one of the four tracts, the interest would have vested as to all of them.  326 S.W.2d at 562.  There was a single reservation, created at the time of the sale, governing all of the tracts.  There was no language in the deed, as there is here, that separate tracts of land were subject to separate reservations.

Temple maintains that when a lease conveys an interest in non-contiguous tracts subject to a habendum clause requiring production on "said land" or "said premises," production on only one tract will hold the lease as to all tracts conveyed by the lease.  See Hillegust, 282 S.W.2d at 896.  In Hillegust, grantors conveyed

12

fractional interests in two tracts to two grantees. These interests were subject to termination if no production was occurring at the end of fifteen and twenty years, respectively. Grantors' successors argued that the tracts had been severed by pre-existing leases and therefore production on one would not prevent termination of the grantees' interests in the other. Treating the conveyed interests like leases, the court held in favor of the grantees.

The interests subject to termination in <u>Hillequst</u> were held by grantees, not reserved by grantors. We do not accept Temple's argument that the reservation provisions of the deed here should be treated as a lease's habendum clause. It is true that both a deed conveying a determinable interest and a mineral lease create estates subject to the same principles of Texas law. <u>Midwest Oil Corp. v. Winsauer</u>, 323 S.W.2d 944, 948 (Tex. 1959). This deed, however, did not convey a determinable interest; it reserved one.

The district court noted that Texas law requires specific language to impose a limitation on a grant. <u>See</u> <u>Tomlin v. Petroleum Corp. of Texas</u>, 694 S.W.2d 441, 442 (Tex. App.--Eastland 1985, no writ). We agree, but as we see it the only grant here was to the United States. Temple conveyed a present interest in the surface and a future interest in the mineral estate. It kept a determinable interest in the mineral estate. The reservation was not a grant and Temple gains no comfort from the rule stated in <u>Tomlin</u>.

13

The longer Temple's present interest in the circular tracts is preserved, the less the United States has received as grantee of a future interest. Under Texas law, deeds are construed to vest an interest as speedily as their terms will allow. Victoria Bank & Trust Co. v. Cooley, 417 S.W.2d 814, 817 (Tex. Civ. App.--Houston [1st Dist.] 1967, writ ref'd n.r.e.); Hedick v. Lone Star Steel Co., 277 S.W.2d 925, 929 (Tex. Civ. App.--Texarkana 1955, writ ref'd n.r.e.); Soper v. Medford, 258 S.W.2d 118, 122 (Tex. Civ. App.--Eastland 1953, no writ). In the absence of clear language preserving Temple's present interest in every tract pending the cessation of commercial operations on all others, we adopt that reading which gives the grantee an immediate possessory interest.

We REVERSE the judgment of the district court. We hold that Temple-Inland Forest Products Corporations's mineral interest in each of the twenty-two circular tracts reserved in 1985 terminated or shall terminate when, at the end of a five-year period, there are no commercial operations on that circular tract. We RENDER judgment accordingly.