**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2011

Lyle W. Cayce
Clerk

No. 10-50106

TRAVIS COUNTY, TEXAS,

Plaintiff–Appellee,

v.

FLINT HILLS RESOURCES, L.P.; KOCH PIPELINE CO., L.P.,

Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:08-CV-934

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Travis County, Texas (the County or grantor), owns property subject to a pipeline easement in favor of Flint Hills Resources, L.P.  A petroleum pipeline passing through the easement is owned by Flint Hills and operated by Koch Pipeline Co., L.P., to whom we will refer collectively as Flint Hills or grantee. The County contracted to sell the tract on which the easement is located, and the buyer proposed to build a railroad spur over the pipeline to connect with a nearby railroad track.  The County sought declaratory judgment that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50106

easement gives the County an unconditional right to construct a spur over the pipeline. The district court granted summary judgment in favor of the County. Flint Hills appeals. We reverse and remand.

## I

Flint Hills constructed an underground pipeline through the County's property pursuant to a 1989 easement between the parties' predecessors-in-interest. The pipeline and ten-foot wide easement run along the entire eastern boundary of the County's property. A railroad track runs parallel to and about 50 feet east of that boundary. The pipeline lies between the inner boundary of the easement and the railroad track. The only means of accessing the railroad track from the County's property is to erect a spur over or across the pipeline easement.

In 2008, the County contracted to sell the property to Balcones Resources (Balcones). Balcones subsequently informed Flint Hills of its desire to construct a rail spur over Flint Hills' pipeline and easement. Flint Hills objected that the easement prohibits construction of a rail spur over the pipeline but offered to waive its objection if Balcones reimbursed Flint Hills for safety modifications necessary to accommodate the spur. The principal modification necessary to accommodate a rail crossing over the pipeline is lowering the pipeline from a depth of four feet required by the easement to a depth of six feet, the depth necessary to meet the current industry safety standard. Flint Hills estimates that the necessary modifications will cost more than $575,000.

The County has alleged that the sale of the property from the County to Balcones has been postponed due to the dispute regarding the easement. The County filed suit in Texas state court, seeking declaratory judgment that the easement gives the County a right to build a rail spur across the easement. Flint Hills subsequently removed the case to federal court.

No. 10-50106

Both parties moved for summary judgment. Flint Hills contends that the easement expressly prohibits the construction of a railroad spur over or across its pipeline and that in any event, the costs of complying with safety regulations associated with the construction of such a spur are to be borne by the constructor of the spur by virtue of a Texas statute.[1] The District Court ruled in favor of the County, concluding that the easement provided an "unconditional right" to construct a rail spur on the property, and ordering Flint Hills to either cease using the pipeline or pay for necessary safety modifications. This appeal followed.

## II

### A

We review de novo the district court's grant of summary judgment, applying the same standards as the district court.[2] Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

The parties agree that Texas substantive law governs construction of the easement. Under that law, "[t]he rules of contract construction and interpretation apply to easement agreements."[4] All parties contend that the easement is unambiguous, and we agree. Interpretation of an unambiguous contract is a matter of law, also subject to de novo review.[5] Our primary objective when interpreting contracts is "to ascertain and to give effect to the

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 756.121-.123.

[2] *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010).

[3] FED. R. CIV. P. 56(a).

[4] *DeWitt Cnty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

[5] *Temple-Inland Forest Prods. Corp. v. United States*, 988 F.2d 1418, 1421 (5th Cir. 1993).

intentions of the parties as expressed in the instrument."[6]   To achieve this objective, we "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."[7]

We conclude that, even assuming that the easement contemplates that the County could construct a railroad spur over or across the pipeline, the easement also contemplated that the pipeline would be buried at a depth of four feet at the time it was constructed.  The easement does not expressly require Flint Hills to relocate its pipeline to a lower depth to accommodate a railroad spur.  At best, the easement agreement is silent as to who pays costs when the County desires to build a structure across the easement that entails relocation of the pipeline within the easement to a depth below four feet.  In the face of this silence, we conclude that sections 756.121-.123 of the Texas Health and Safety Code govern. These sections of the Texas Code apply only when there is no written agreement "to the contrary" between the owner of the easement and the party desiring to place or maintain construction across a pipeline.[8]

We first explain our conclusion that the express provisions of the easement agreement are silent as to which party shall bear the costs of relocating the pipeline when the grantor desires to build a railroad spur, as contemplated by the parties, and the construction will require the pipeline to be relocated to a depth greater than that contemplated by the written terms of the easement.

**B**

The fifth paragraph of the easement provides:

---

[6] *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980).

[7] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis removed).

[8] TEX. HEALTH & SAFETY CODE ANN. § 756.121(a).

No. 10-50106

GRANTOR reserves the right to use said premises for the following purposes:

> (1) Cultivation
> (2) Access by rail or railroad
> (3) Parking
> (4) Drainage improvements
> (5) Utility Lines
> (6) Any other usage which does not materially interfere with the operation or maintenance of GRANTEE's pipeline;

and, in connection therewith, it is expressly agreed that GRANTOR shall have the right to construct and maintain upon the premises fences, roads, rail spurs, parking lots, drainage improvements, utility lines and other items which do not materially interfere with the operation of GRANTEE's pipeline. Provided GRANTOR shall not have the right to construct any structure or building over said pipeline after such pipeline has been constructed.

The district court determined that the language reserving the right to use the premises for "access by rail and railroad," and the express reservation of "the right to construct . . . rail spurs," gave the County an "unconditional right" to construct a rail spur over the pipeline. It therefore ordered Flint Hills to either discontinue use of the pipeline or pay for safety modifications necessary to accommodate the spur.

In so holding, the court rejected two other constructions of Paragraph 5 advanced by Flint Hills. First, the court determined that the final sentence of the paragraph—which provides that the grantor "shall not have the right to construct any structure or building over said pipeline after such pipeline has been constructed"—did not prohibit the construction of a rail spur. The court rejected Flint Hills' argument that the word "structure" should be interpreted broadly to mean "any construction." The court reasoned that such an interpretation must fail because the easement expressly reserves the right to construct a rail spur over the easement.

No. 10-50106

The district court also rejected Flint Hills' argument that, because the proposed spur would materially interfere with the operation of the pipeline, the material interference clauses prohibit its construction. Paragraph 5 contains two material interference clauses. The first reserves the right to use the premises for "[a]ny other usage which does not materially interfere with the operation of GRANTEE's pipeline." The second is in the list of items which the parties "expressly agreed" could be constructed: "fences, roads, rail spurs, parking lots, drainage improvements, utility lines and other items which do not materially interfere with the operation of GRANTEE's pipeline." The district court determined that the clauses applied only to "any other usage" and "other items," respectively, and not to each reserved usage and item.

We do not reach whether the District Court properly interpreted either the meaning of "structure" as used in this easement or whether the clauses regarding material interference with the operation of the pipeline also modified the grantor's reserved right to use the premises for access by rail or railroad. Because Flint Hills does not seek to prohibit the construction of the railroad spur but only seeks to require the County to pay the cost of complying with applicable pipeline safety regulations that will be incurred as a result of the railroad spur, we assume, without deciding, that the proposed railroad spur at issue is not a "structure" within the meaning of the clause in the easement that would otherwise prohibit "any structure or building over said pipeline after such pipeline has been constructed." We also assume that the easement contemplated that the grantor might construct a railroad spur over the pipeline after the pipeline was constructed.

The easement agreement expressly contemplates that the pipeline could be buried at a depth of four feet. Neither party has offered evidence of or briefed what safety regulations were in effect at the time the pipeline was constructed. Accordingly, on the record before us, we can only conclude that the parties

No. 10-50106

contemplated at the inception of the easement that a four-foot depth was sufficient for all purposes of their agreement. The easement does not expressly require Flint Hills to relocate its pipeline to a lower depth in the event that the County desires to erect a railroad spur across the easement. The easement itself is silent as to whether the subservient estate,[9] owned by the County, must pay all costs associated with the exercise of the right to build a railroad spur over the pipeline easement, which is the dominant estate,[10] including costs associated with burying the pipeline at least six feet deep necessitated by the construction of the railroad spur.

An analogy may perhaps make clearer the difference between provisions in an easement that permits the parties to do certain things and an easement that *expressly* allocates the cost of undertaking those activities. It is not uncommon in Texas for an easement to require a pipeline to be buried below "plow depth" and to specify what that depth will be. The easement may also provide, as the County's easement provides in this case, that the subservient estate may be used for "cultivation" or to grow crops. It is at least conceivable that an owner of the subservient estate might desire to grow vegetation that necessitated plowing beneath the agreed-upon plow depth. An easement like the one hypothesized does not altogether prohibit the owner of the subservient estate from such cultivation. The owner of the pipeline would have no basis for objecting to the contemplated use of the subservient estate if the owner of the latter agreed to pay all costs associated with the cultivation, including costs to bury the pipeline deeper. The pipeline owner could not prohibit such a use under these circumstances. But the easement could not be construed to require the pipeline owner to pay the cost of burying the pipeline at a greater depth than

---

[9] *See Street v. Sinclair Pipeline Co.*, 386 S.W.2d 350, 352 (Tex. 1965).

[10] *See id.*

No. 10-50106

the parties agreed in order to accommodate the right of cultivation. *At best*, the easement is silent as to who will bear those costs. Similarly, we conclude that *at best*, the easement before us is silent as to who would bear the costs of burying the pipeline to a greater depth than expressly agreed if the construction of a railroad spur across the easement is desired by the owner of the subservient estate.

The County points out in its brief that after suit was filed, it surveyed the pipeline's depth at seven locations, and at four of those points, the pipeline is buried less than 4.5 feet below the surface and at one point is only 1.8 feet below the surface. This is irrelevant. First and foremost, the parties have stipulated that even were the pipeline buried at a uniform depth of 4.5 feet, as Flint Hills alleged, the pipeline would still have to be buried at a depth of six feet to comply with federal regulations, and expenditures would be necessary to bury it at a depth of six feet.

On the record before us, we assume without deciding that the County has the right to construct a railroad spur across the pipeline easement. It is beyond dispute that the easement only requires that the pipeline be buried at a depth of four feet. The parties agree that the pipeline will have to be buried to at least a depth of six feet to comply with federal regulations if the spur is built. We therefore consider the applicability of Texas's Health and Safety Code, which Flint Hills contends governs the present dispute.

The contemplated railroad spur is unquestionably "[c]onstruction" across a "[p]ipeline facility" within the meaning of section 756.121 of the Texas Health and Safety Code, and the County or its prospective grantee, Balcones, would be a "[c]onstructor" within the meaning of that provision.[11] The first issue that we

---

[11] TEX. HEALTH & SAFETY CODE § 756.121 provides:

(1) "Construction" means a building, structure, driveway, roadway, or other

must resolve is whether subchapter H of that Code, within which the sections in contention are found, applies. Subchapter H applies "unless there is a written agreement . . . to the contrary between the owner or operator of the affected pipeline facility and the person that places or causes a construction to be placed on the easement or right-of-way of a pipeline facility."[12]  Notably, this section does not say that subchapter H is inapplicable whenever there is a written agreement.  Obviously, a written easement agreement is a written agreement. Subchapter H is only inapplicable when there is a written agreement "to the contrary."

The County argues that section 756.122 does not apply because there is an agreement "to the contrary" to the provisions of subchapter H in which section 756.122 is found.  The County contends that the easement contemplates that a rail spur may be constructed and that the easement "anticipates the need for Flint Hills and Koch Pipeline to place their pipeline at a sufficient depth to accommodate the property owner's reserved uses, which includes a rail spur."

---

construction any part of which is physically located on, across, over, or under the easement or right-of-way of a pipeline facility or that physically impacts or creates a risk to a pipeline facility.

(2) "Constructor" means a person that builds, operates, repairs, replaces, or maintains a construction or causes a construction to be built, operated, repaired, maintained, or replaced.

(3) "Pipeline facility" means a pipeline used to transmit or distribute natural gas or to gather or transmit oil, gas, or the products of oil or gas.

[12] TEX. HEALTH & SAFETY CODE § 756.122(a) provides:

(a) This subchapter applies to a construction or the repair, replacement, or maintenance of a construction unless there is a written agreement, including a Texas Department of Transportation right-of-way agreement, to the contrary between the owner or operator of the affected pipeline facility and the person that places or causes a construction to be placed on the easement or right-of-way of a pipeline facility.

No. 10-50106

But this is demonstrably faulty reasoning. The easement provides that the pipeline would be buried at a depth of only four feet. The agreement does not provide what happens when federal regulations require a depth greater than four feet if the County decides to build a railroad spur across the pipeline. There is no express agreement that addresses this contingency.

To determine whether the written easement agreement between Flint Hills and the County is "contrary to" subchapter H, we must consider section 756.123. The only argument that the County makes regarding section 756.123 is that it would violate the United States Constitution by abrogating existing contractual rights. We need not consider this question, however, since the County failed to support this bald assertion with argument or authority.[13]

We conclude that the easement agreement is not "to the contrary" of any provisions in subchapter H. Our focus is on the substantive provisions of that subchapter, contained in section 756.123, which provides:

> A person may not build, repair, replace, or maintain a construction on, across, over, or under the easement or right-of-way for a pipeline facility unless notice of the construction is given the operator of the pipeline facility and:
>
> (1) the operator of the pipeline facility determines that the construction will not increase a risk to the public or increase a risk of a break, leak, rupture, or other damage to the pipeline facility;
>
> (2) if the operator of the pipeline facility determines that the construction will increase risk to the public or the pipeline facility, the constructor pays the reasonable, necessary, and documented cost of the additional fortifications, barriers, conduits, or other changes or improvements necessary to protect the public or pipeline facility from that risk before proceeding with the construction;

---

[13] *See N.W. Enters., Inc. v. City of Houston*, 352 F.3d 162, 183 n.24 (5th Cir. 2003).

No. 10-50106

    (3)  the building, repair, replacement, or maintenance is conducted under an existing written agreement;  or

    (4)  the building, repair, replacement, or maintenance is required to be done promptly by a regulated utility company because of the effects of a natural disaster.[14]

Notice was given, so that is not at issue. Nor are subsections (1) or (4) at issue. The parties have stipulated that construction of the railroad spur over the pipeline will increase risk to the public within the meaning of subsection (2), and it is undisputed that the County has not paid or agreed to pay the costs necessary to protect the public from that risk. Subsection (2) applies unless subsection (3) is applicable. The question, then, is whether "the building, repair, replacement, or maintenance is conducted under an existing written agreement." As we have seen, there is no express agreement that the County has the right to build a railroad spur without burying the pipeline to a depth required by federal regulations or paying Flint Hills the cost of complying with those regulations.

Under these circumstances, section 756.123(2) governs. The County or its grantee may not proceed to build the railroad spur until "the constructor pays the reasonable, necessary, and documented cost of the additional fortifications, barriers, conduits, or other changes or improvements necessary to protect the public or pipeline facility from that risk before proceeding with the construction."

\*     \*     \*

For the foregoing reasons, we REVERSE the summary judgment entered by the district court and REMAND for further proceedings consistent with this opinion.

---

[14] TEX. HEALTH & SAFETY CODE ANN. § 756.123.